CITY OF MEQUON and others, Respondents, v. LAKE ES-
TATES COMPANY, Appellant.

*No. 215.   Argued October 6, 1971.—Decided November 5, 1971.*
(Also reported in 190 N. W. 2d 912.)

766

767

768

For the appellant there were briefs and oral argument by *Lloyd S. Jacobson* of Milwaukee.

For the plaintiff-respondent there was a brief and oral argument by *John A. Meyer* of Milwaukee.

For the intervening plaintiffs-respondents there was a brief by *Gerold & Huiras* of Port Washington, and oral argument by *Ralph J. Huiras*.

HEFFERNAN, J. The defendant's argument on this appeal as it pertains to the city's claim for the sums due for recreational purposes is simply that sec. 3.08 was repealed and, pursuant to the terms of the agreement, no sums were to be due the city in that event or if the ordinance was found to be illegal. The city acknowledges that Ordinance 63–23 repealed sec. 3.08 but argues that, by virtue of the simultaneous re-creation of the provisions relating to the dedication of lands for recreation purposes or payments in lieu thereof, Ordinance 63–23 was not a repeal as contemplated in the agreement and the notes. We agree with the city's contention in this respect.

The new ordinance retained the requirement of the dedication of land for park and recreation use. The requirement of an in-lieu payment of $80 per lot remained the same.

In accordance with the rule of *State ex rel. Cities Service Oil Co. v. Board of Appeals* (1963), 21 Wis. 2d 516, 527, 124 N. W. 2d 809:

"It is well settled that the effect of the repeal of a statute and its re-enactment at the same time in substantially the same words is to continue the statute in uninterrupted operation."

In the instant case the repeal and re-creation of the portions of the ordinance pertaining to the dedication of land or the making of in-lieu payments was simultaneous. Where a statute or ordinance is repealed and re-created in a simultaneous action, and where a portion of an original ordinance or statute is retained in the re-created enactment in substantially the same form, there is no repeal of the provisions that appeared in the original enactment. The provisions that are not re-enacted are of course repealed.

Under the facts of this case, the requirement that the subdivider pay $80 per lot to the city was not repealed, and the subdivider cannot avoid payment by reliance upon the exculpatory clause of its agreement and notes. It is equally clear that Ordinance 63–23 expressly repealed those provisions of sec. 3.08 which required the dedication of land or the payment of money for the school districts. New sec. 3.08 made no reference to such dedications or payments.

In view of the clear repeal of the provisions relating to in-lieu payments for school purposes, the school districts could not and have not prosecuted their claim on the ground that the underlying ordinance remains in effect. Rather, they assert that the original sec. 3.08 was in effect at the time the agreement and notes were executed, that the subdivider by its conduct in submitting

a plat for approval was bound by the terms of the ordinance, and that the city's acceptance of that plat while original 3.08 was in effect resulted in a contract from which the subdivider cannot be exonerated by reason of a later repeal. In legal theory, the school districts' basic premise is correct.

"A proposition or offer made to the proper corporate authorities and an acceptance of the terms thereof by an ordinance, resolution or motion constitutes a contract. . . . an ordinance granting a right, accepted and acted upon by the grantee, becomes an irrevocable contract." 10 McQuillin, *Municipal Corporations* (3d ed.), p. 218, sec. 29.03.

It is not a fact in this case that the subdivider made an offer to the corporate authorities to accept the terms contained in the ordinance. Rather, the subdivider made a counteroffer on terms different than provided in the ordinance; and the city, in accordance with its purported authority under sec. 3.12, varied the provisions of sec. 3.08 to conform with the subdivider's counteroffer. An acceptance was made on terms not expressly provided for in sec. 3.08.

The subdivider's proposed agreement recited that it considered the ordinance requirements illegal and that it would not be bound in the event the ordinance was repealed. The agreement was considered by the finance committee on March 19, 1963. The agreement on the recommendation of the committee was accepted and approved by the common council at the adjourned March 19th meeting held on March 21, 1963. The plat was approved by council resolution on the same day. The agreement as approved by the council specifically provided a variance from the provisions of sec. 3.08 of the Code of Ordinances. Thus, the subdivider's counteroffer to the city was conditional and was to be effective only if the variance from the provisions of sec. 3.08 was granted.

The facts are that the subdivider did not accept the terms of original sec. 3.08 but filed the plat only under the terms of the variance.

If it was within the authority of the city council to grant such variance, the schools as a third-party beneficiary to the contract took only the rights accorded them by the contract and were bound by the restrictions therein, including the proviso that no payment was to be made if underlying sec. 3.08 was repealed. We said in *Winnebago Homes, Inc. v. Sheldon* (1966), 29 Wis. 2d 692, 700, 139 N. W. 2d 606:

" 'It has been repeatedly held by this court . . . that when a right has been created by contract, the third party claiming the benefit of the contract takes the right subject to all the terms and conditions of the contract creating the right.' "

It should also be pointed out, whatever the rights of the school districts, that their assertion that they are entitled to recover on the note is incompatible with their position that the agreement is invalid, for the notes are clearly referable to the terms of the agreement. The schools cannot claim to be third-party beneficiaries of the agreement between the city and the subdivider and simultaneously disavow crucial and controlling conditions of the contract.

Having determined that the contract between the subdivider and the city was not a mere acceptance of the terms of sec. 3.08, the question remains whether the city had the authority to enter into the contract which resulted from the approval of the agreement.

Ch. 236, Stats., delegates powers to the cities to approve subdivision plats. While it is hornbook law that cities, as creatures of the legislature, have only such powers as are expressly granted to them and such others as are necessary and convenient to the powers expressly granted, it is clear, in regard to plat approvals, that

discretion, within limits, was granted to the municipalities. Sec. 236.13 (1) (b) provides that plat approval shall be conditioned upon compliance with municipal, town, or county ordinances. Where the governing board has a planning agency, as does the city of Mequon, sec. 236.45 (2) states that ordinances may provide other approving requirements for such subdivision. The general declaration of legislative intent appearing in sec. 236.45 (1) indicates that the purpose of the law is to permit a municipality to adopt regulations encouraging the most appropriate use of land throughout. Sec. 236.45 (2) (b) directs that any ordinance adopted by a municipality shall be liberally construed in favor of the municipality. This reserves to the city a broad area of discretion in implementing subdivision control provided that the ordinances it adopts are in accord with the general declaration of legislative intent and are not contrary, expressly or by implication, to the standards set up by the legislature. This is a grant of wide discretion which a municipality may exercise by ordinance or appropriate resolution.

Sec. 3.12 of the Mequon Ordinances provided that variance from the basic provisions could be granted in the interests of substantial justice and in accord with the basic principles of subdivision control. When the city adopted the agreement and specifically found that the reasons for the variances were consonant with the objectives of sec. 3.12 and made specific findings that showed that the variances granted comported with the legislative intent, "the most appropriate use of land," it fully complied with the statutes and was acting within the delegated authority conferred by the legislature. The council under its ordinances had the power to vary the provisions of sec. 3.08 of the Ordinances, and its exercise of that power in the instant case was within the ambit of its statutory discretion.

Moreover, the agreement ratified by the council was supported by substantial consideration. The subdivider

surrendered its right to attack the validity of the basic ordinance, and we take judicial notice that, at the time of the execution of the agreement, the legality of such ordinances had not been decided. In addition, the subdivider covenanted to provide open space areas and recreation facilities. The agreement between the city and the subdivider is valid and is determinative of the rights of the schools as third-party beneficiaries as well as the rights of the immediate parties.

Accordingly, we conclude that the express repeal of the provisions of sec. 3.08 of the Mequon Municipal Code terminated the subdivider's obligation to make payment of the sums designated for school purposes. Although the defendant at trial also claimed that the schools' cause of action was barred by the statute of limitations, the trial court made no finding in that respect. Our determination is on the merits also. We conclude that the agreement was valid, and since the ordinance did not repeal the provisions which required the subdivider to make payment for recreation purposes, the judgment on the note in the sum of $17,963.33 plus costs and disbursements and interest must be affirmed. The ordinance which required in-lieu payments for school purposes was repealed and, under the terms of agreement, the subdivider's obligation to make that payment was terminated, and the judgment in that respect must be reversed.

*By the Court.*—The portion of the judgment awarding $17,963.33 to the city, plus costs and disbursements and interest, is affirmed; that portion of the judgment awarding $26,945 to the city and assigning such sum to the school districts is reversed.