CHARLES M. HILL, SR., Secretary, Department of Local Affairs Development
You advise that a number of questions have arisen in connection with your subdivision plat review responsibilities under ch. 236, Wis. Stats. These questions relate principally to certain provisions of secs. 236.16 and 236.20, Stats. The questions you pose will be discussed seriatim.
"1. Is Section 236.16 (2), Wisconsin Statutes, fully applicable to land subdivision plats located on islands?"
Section 236.16 (2), Stats., relates to minimum street widths and provides:
"All streets shall be of the width specified on the master plan or official map or of a width at least as great as that of the existing streets if there is no master plan or official map, but no full street shall be less than 60 feet wide unless otherwise permitted by local ordinance. Widths of town roads platted after January 1, 1966, shall, however, comply with minimum standards for town roads prescribed by s. 86.26. Streets or frontage roads auxiliary to and located on the side of a full street for service to the abutting property may not after January 1, 1966, be less than 49.5 feet wide."
In my opinion, the provisions of ch. 236, Stats., in their entirety, are applicable to the platting of land located on islands.
Section 236.01, Stats., provides:
"The purpose of this chapter is to regulate the subdivision of land to promote public health, safety and general welfare; to further the orderly layout and use of land; to prevent the overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light and air; to facilitate adequate provision for water, sewerage and other public requirements; to provide for proper ingress and egress; and to promote proper monumenting of land subdivided and conveyancing by accurate legal description. The approvals to be obtained by the subdivider as required in this chapter shall be based on requirements designed to accomplish the aforesaid purposes." *Page 317 
It is readily apparent that this manifestation of legislative purpose is directly applicable to land located on islands. Obviously, regulation of orderly layout and use, prevention of overcrowding, adequate provision for water and sanitation, provision for proper ingress and egress and accurate legal description, is just as essential on islands as elsewhere. In fact, it is probable that such regulation on islands is more important than where the water environment is not present, since aesthetic and environmental considerations that directly affect the inhabitants of an island will most likely directly and indirectly affect the public on the adjacent mainland as well.
Nor is it apparent that the legislature intended to exclude island subdivision plats from the provisions of ch. 236, Stats. Although sec. 236.03 (2) and (3), Stats., does expressly exclude certain plats and sales or exchanges of parcels of land from some or all of the provisions of ch. 236, there is no mention of excluding subdivision plats proposed on islands.
"II. Can the minimum street width requirements that are prescribed by Section 236.16 (2) be reduced by local ordinances for land subdivision plats located on islands?"
Section 236.16 (2), Stats., provides that all platted streets shall be at least 60 feet wide, unless otherwise permitted by "local ordinance." In the case of town roads and certain auxiliary streets or frontage roads, the extent to which street width requirements may be regulated by local ordinance is further restricted. As pointed out later in my answer to your seventh question, the local ordinances referred to in the statute are those adopted by cities, villages or towns. The statute does not authorize reduction of the statutory minimum street widths by county ordinance.
Subject to these restrictions, the 60-foot minimum street width prescribed by the statute may be reduced by local ordinance in a number of different ways. For instance, an ordinance may contain a provision positively establishing one or more classes of streets and assigning specific widths, some presumably narrower than the statutory 60 feet, for each such class. On the other hand, the local ordinance may contain a provision which allows streets less than 60 feet as a special exception to the normal minimum only when certain conditions, specifically set forth in the ordinance, are found to be met. Another means by which the statutory street width *Page 318 
minimum may be reduced is through use of a variance provision in the local ordinance regulating street widths. However, such a provision must establish a standard for the granting of such variance. 8 McQuillin, Mun. Corp. (3rd Ed.), p. 521, sec. 25.161. For instance, the ordinance might specifically authorize some variance from the strict application of the normal minimum street width requirement in terms similar to those set forth in the statutes for the granting of zoning variances, e.g., where literal enforcement would result in pratical [practical] difficulty or unnecessary hardship. Depending upon the complexity of the ordinances involved, there may, of course, be other means by which ordinances may reduce street widths below the standard minimum 60-foot width established by statute.
It appears that the variance provision has enjoyed popularity in both zoning and subdivision control ordinances as a means by which the 60-foot minimum street width of sec. 236.16 (2), Stats., is put aside. Because of its apparent widespread use, therefore, further comment concerning such variances seems appropriate.
Prior to the recent enactment of ch. 60, Laws of 1973, only the zoning board specifically designated by statute, rather than the governing body or its plan commission or committee, could validly grant zoning variances and special exceptions, at least in cities and villages. State ex re. Skelly Oil Company v. Common Council,City of Delafield (1973), 58 Wis.2d 695, 207 N.W.2d 585. Chapter 60, Laws of 1973, which became effective July 7, 1973, altered the law in this respect only to the extent that zoning special exceptions, but not zoning variances, now may also be granted by a governing body or its plan commission or committee, if such action is authorized by ordinance. Reading the Skelly
case and ch. 60, Laws of 1973 together, therefore, it is apparent that any attempt to utilize a zoning variance would be ineffectual unless such variances were properly granted by a zoning board of appeals, in the case of cities and villages, or the zoning board of adjustment, in those counties and towns which have created such boards. Sections 59.99 (7) (c). 60.75 (4),61.35 and 62.23 (7) (e) 7., Stats.
If the variance provision appears in a subdivision control ordinance, adopted pursuant to sec. 236.45, Stats., rather than a zoning ordinance, however, the statutory limitations pointed out in *Page 319 
the Skelly case do not appear to apply, and the governing body apparently may designate itself or its planning committee or commission as the agency to grant a variance to the street width requirements of the subdivision control ordinance and sec. 236.16
(2), Stats. In City of Mequon v. Lake Estates Co. (1971), 52 Wis.2d 765,190 N.W.2d 912, for instance, the city ordinances provided that "where there has been a report and recommendation of the plan commission and where the common council found it inappropriate to literally apply the requirements of the ordinances, the council could, to effect substantial justice, waive or vary the provisions of the ordinances in respect to the approval of subdivisions." 52 Wis.2d 769. Pointing out that sec.236.45, Stats., grants municipalities a broad area of discretion in implementing subdivision control, the court stated, at p. 774:
"The general declaration of legislative intent appearing in sec. 236.45 (1) indicates that the purpose of the law is to permit a municipality to adopt regulations encouraging the most appropriate use of land throughout. Sec. 236.45 (2) (b) directs that any ordinance adopted by a municipality shall be liberally construed in favor of the municipality. This reserves to the city a broad area of discretion in implementing subdivision control provided that the ordinances it adopts are in accord with the general declaration of legislative intent and are not contrary, expressly or by implication, to the standards set up by the legislature. This is a grant of wide discretion which a municipality may exercise by ordinance or appropriate resolution."
The different treatment of the granting of variances under the subdivision law as opposed to that under the zoning law is perhaps explained in part by basic differences between zoning and planning recognized in the law. Comment on this difference is found in Yokley, The Law of Subdivisions, § 39 at p. 81, and § 15, at p. 35, where the following is stated:
"While in the zoning process, the work of the planning commission is advisory only in most jurisdictions, a different responsibility is vested in the planning commission with respect to subdivision control. Here the powers and duties of the planning commission are brought into play to a more definitive extent under statutory provisions that vest in the planning commission rather *Page 320 
broad power in the approval or disapproval of subdivision plans or plats."
In Wisconsin, the increased reliance on planning agencies in reference to subdivision control is recognized in sec. 236.45 (2) (a), Stats., which limits the statutory delegation of power to enact subdivision control ordinances to municipalities and towns and to counties which have established planning agencies. Such reliance is also evident in sec. 236.10 (1) (b) 3 and (c), Stats., which authorizes a county planning agency to act for the county in approving plats under certain circumstances, and in sec. 236.10 (3), Stats., which provides:
"(3) The authority to approve or object to preliminary or final plats under this chapter may be delegated to a planning committee or commission of the approving governing body. Final plats dedicating streets, highways or other lands shall be approved by the governing body of the town or municipality in which such are located."
"III. Is Section 236.20 (4) (d) fully applicable to land subdivision plats located on islands?"
Section 236.20 (4) (d), Stats., requires that:
"(d) Each lot within the plat must have access to a public or private street unless otherwise provided by local ordinance."
Although it may be argued that there may be little need for any platted streets whatsoever on some smaller islands, this statute is just as applicable to island subdivisions as to subdivisions on the mainland. The statute requires land access as between lots, even though there may also be access to all lots by water. However, as is the case with certain of the statutory street widths established under sec. 236.16 (2), Stats., the law provides that the subdivider may be relieved from the strict application of the statutory requirements by local ordinance.
"IV. Can an approving authority by ordinance waive the requirements of Section 236.20 (4) (d) for street access to lots in land subdivision plats on islands?"
An approving authority may waive the requirements of sec.236.20 (4) (d), Stats., under the same terms and conditions and *Page 321 
subject to the same limitations as discussed in reference to sec.236.16 (2), Stats., under question two above.
"V. If the answers to questions II and IV are yes, then does inaction on the part of the approving authority, i.e., failure to act when a plat does not fully comply with Sections 236.16 (2) and 236.20 (4) (d) within the period granted by statute, automatically reduce the requirements of Sections 236.16 (2) and236.20 (4) (d) under the variance and waiver provision of the subdivision ordinance? Or does it require affirmative action by the approving authority to implement such a variance?"
The head of the planning function in the Department of Local Affairs and Development is required by sec. 236.12 (2) (a), Stats., to review plats for compliance with secs. 236.16 and236.20, Stats. Obviously, therefore, if a plat under consideration does not comply with secs. 236.16 (2) or 236.20 (4) (d), Stats., it should be objected to by your department with in the time set forth in sec. 236.12 (3) or (6), Stats. However, under the terms of the latter statute, if your agency fails to act within that time it is "deemed" to have "no objection to the plat." Likewise, if the local approving authority fails to act one way or the other on a plat within the time limitations set forth in sec. 236.11, Stats., such inaction is also deemed to constitute approval of such plat and certification of the plat by public authorities may be compelled if necessary. Yokley, The Lawof Subdivisions, § 55, p. 123; State ex rel. James L. Callan,Inc. v. Barg (1958), 3 Wis.2d 488, 89 N.W.2d 267; State ex rel.Lozoff v. Board of Trustees of the Village of Hartland (1972),55 Wis.2d 64, 197 N.W.2d 798.
In the Lozoff case the village had asserted that the subject plat violated the official map, the village code and sec. 236.15, Stats. In sustaining the lower court ruling to the effect that failure of the village to take timely action constituted approval of such plat under sec. 236.11, Stats., the court likewise pointed out that a tardy objection by the county planning commission was also "of no effect" in light of the time limitations set forth in sec. 236.12 (3) and (6), Stats. In essence, the Callan and Lozoff decisions hold that silence on the part of objecting or approving authorities during the review process entitles a plat to approval despite later assertions that said plat fails to comply with some provision of law. *Page 322 
However, these decisions do not necessarily hold that your agency or a local approving authority is precluded from enforcing compliance with a law which an "approved" plat in fact violates. As pointed out by our Supreme Court, in quoting the trial court in Callan, at page 493:
"`The approval of the plat under ch. 236 in no way authorizes the use of the land so subdivided which is contrary to existing zoning ordinances and any other pertinent municipal ordinances. By the provisions of sec. 236.13 of the Wisconsin statutes the approval is conditioned upon compliance with municipal ordinances.'"
In this regard I also point out that sec. 236.31 (2), Stats., provides in part that:
"(2) Any municipality, town, county or state agency with subdivision review authority may institute injunction or other appropriate action or proceeding to enjoin a violation of any provision of this chapter, ordinance or rule adopted pursuant to this chapter. Any such municipality, town or county may impose a forfeiture for violation of any such ordinance, . . ."
In the final analysis, whether the court would hold that a variance could be granted by other than affirmative action by the approving authority would probably depend on the exact circumstances existing in the case before the court. If, for instance, the plan commission recommended to the governing body approval of a plat which contained streets of a width which would require that a variance be granted by the commission or the governing body, the courts might well conclude that silence on the part of the governing body amounts to assent to such a variance. On the other hand, if the local ordinance authorized only the plan commission to grant such variance and the commission never received or acted upon the plat, silence by the governing body would probably not be held to amount to an implementation of such variance.
"VI. Does the answer to question V apply to all plats that are subject to the provisions of Chapter 236?"
The answer to this question is "yes."
"VII. Must all the approving authorities involved with a plat enact ordinances in order to vary the requirements of Sections *Page 323 236.16 (1) and 236.20 (4) (d)? If not all, then which approving authorities must have such ordinances in order to effect reductions in these requirements?"
Section 236.16 (1), Stats., establishes minimum lot width and size requirements which vary depending upon whether the county involved has a population of 40,000 or more. The statute specifically authorizes reductions in these standards in the following terms:
". . . In municipalities, towns and counties adopting subdivision control ordinances under s. 236.45, minimum lot width and area may be reduced to dimensions authorized under such ordinances if the lots are served by public sewers."
If a local governing body has not adopted a subdivision control ordinance under sec. 236.45, Stats., any regulation of lot width and size within subdivisions by that local unit of government, by zoning ordinance or otherwise, must conform at least to the minimum standards established by sec. 236.16 (1). However, if such governmental unit has not adopted any lot width and size regulations but shares overlapping plat approval authority over a particular area with another approving authority, such other approving authority may unilaterally reduce the statutory standards effective in such area by its subdivision control ordinance under the authority of sec. 236.16 (1), Stats. Of course, where more than one of the necessary approving authorities adopts an ordinance regulating lot width and size, whether by zoning or subdivision control ordinance, the plat must comply with the most restrictive requirements. Section 236.13
(4), Stats.
Section 236.20 (4) (d), Stats., presents a somewhat different situation. Both secs. 236.20 (4) (d) and 236.16 (2), Stats., establish certain minimum standards which can be made more or less restrictive by a "local ordinance." Unlike sec. 236.16 (1), Stats., such local ordinance need not be part of the comprehensive subdivision control ordinance otherwise authorized under sec. 236.45, Stats.
While a county may or may not be involved in the approval of subdivision plats within its boundaries, every subdivision of land in every county must at least be approved by a municipality (an incorporated city or village) or a town. It is my opinion that the *Page 324 
legislature was referring to these local governmental units, and not to counties, as being the only legal entities which could enact "local ordinances" varying the minimum platting standards under the limited authority set forth in secs. 236.16 (2) and236.20 (4) (d), Stats.
This conclusion is supported by the 1955 Report of theWisconsin Legislative Council (Vol. IV, Subdivision and Platting of Land) which recommended the adoption of the "local ordinance" language of sec. 236.16 (2) in the following terms:
"The committee also recommends the following changes which will increase the quality requirements for subdivision plats:
"* * *
"(b) A minimum street width is required. This provides that the streets must be 60 feet wide unless the local municipality or town by ordinance permits a lesser width. See § 236.16 (2) of the proposed revision." (Emphasis added.)
The definition of "municipality" in the then proposed draft, and under present sec. 236.02 (3), Stats., includes only "an incorporated city or village."
Such conclusion is also consistent with sec. 236.29 (1), Stats., which provides that streets and other public uses "shall be held by the town, city or village in which such plat is situated in trust to and for such uses and purposes." (Emphasis added.)
It should be noted, however, that where a county has adopted a subdivision control ordinance under sec. 236.45, Stats., which is more restrictive than the provisions of secs. 236.16 (2) or236.20 (4) (d), Stats., the county ordinance would prevail to the extent of any conflict. Section 236.13 (4), Stats.
Your eighth and ninth questions ask:
"VIII. Are the provisions of Section 236.16 (3) fully applicable to plats located on islands?"
"IX. Can the waiver provision of this section be used to vary the distances between public access points for plats located on islands?"
Section 236.16 (3), Stats., provides: *Page 325 
"(3) LAKE AND STREAM SHORE PLATS. All subdivisions abutting on a navigable lake or stream shall provide public access at least 60 feet wide providing access to the low watermark so that there will be public access, which is connected to existing public roads, at not more than one-half mile intervals as measured along the lake or stream shore except where greater intervals and wider access is agreed upon by the department of natural resources and the head of the planning function, and excluding shore areas where public parks or open-space streets or roads on either side of a stream are provided. No public access established under this chapter may be vacated except by circuit court action."
As pointed out in my answer to your first question, the provisions of ch. 236, Stats., apply to the platting of land located on islands in the same manner as they apply to land located on the mainland. An island has "lake or stream shore" in the same sense as the mainland. I can conceive of no reason why the "waiver" provisions of sec. 236.16 (3), Stats., cannot be applied to island shoreland.
"X. Must the land provided for public access under Section236.16 (3) be restricted to the shoreline, i.e., the island itself, or may public access be wholly or partly provided for on the mainland by agreement between the Department of Natural Resources and the head of the planning function?"
A subdivision is defined by see. 236.02 (8), Stats., as being "a division of a lot, parcel or tract of land by the owner thereof." The land from which the subdivision is made is therefore normally one whole continuous piece no part of which is separated from the rest by intervening land belonging to another. 52 OAG 411 (1963). The combination of two separate lots, parcels or tracts of land as suggested by your question would not conform to this statutory concept. The obvious intent of the statute is to provide access at some point within the subdivision. This object would not be accomplished by a public access located on the mainland across the lake from the island subdivision.
"XI. Under normal compliance with Section 236.16 (3) for plats located on islands, to what depth must the public access extend?"
Accepting the possibility that the island on which the subject subdivision is located is so small that it contains no existing public *Page 326 
roads and that no public roads are planned in the new subdivision, the 60-foot public access must at least extend from the low to the high watermark. 52 OAG 63, 65 (1963). On islands and elsewhere where public roads exist or are part of the proposed subdivision, the 60-foot public access must extend to a point of contact with such public road system.
"XII. What is meant in Section 236.16 (3) by the word `wider' as used in `* * * except where greater intervals and wider access is agreed upon * * *?'"
Your question is presumably intended to seek clarification as to the extent to which discretion may be exercised by the head of the planning function under the quoted language of sec. 236.16
(3), Stats. Since the statute has established a standard for requiring public access, i.e., 60 feet per one-half mile, it is my opinion that where an interval greater than one-half mile is agreed upon, the width of the public access must also be increased sufficient to at least maintain the same ratio between interval and width as in the statutory standard. I understand that such opinion is consistent with the past administrative interpretation of this statutory provision by your department.
RWW:JCM
 *Page 1