■ JACK A. BORNSTEIN et al., Appellants, v AUGUST P. PETRILLO et al., Respondents.—In an action to declare certain local laws null and void and for injunctive relief, plaintiffs appeal from an order of the Supreme Court, Westchester County, entered November 20, 1974, which denied their motion for a preliminary injunction and granted defendants' motions to dismiss the complaint for failure to state a cause of action. Order affirmed, with $20 costs and disbursements jointly to respondents appearing separately and filing separate briefs. No opinion. Rabin, Acting P. J., Hopkins, Latham and Christ, JJ. concur; Cohalan, J., dissents and votes to reverse the order, grant the motion for a preliminary injunction and deny the motions to dismiss the complaint, with the following memorandum: Claiming that the city council, by subterfuge, frustrated the will of a substantial minority of its citizens, plaintiffs commenced this action for a declaratory judgment and for injunctive relief to *inter alia* mandate the holding of a public referendum. This appeal is from an order which denied a motion for a preliminary injunction and granted motions to dismiss the complaint. On February 2, 1974, by local law, the salaries of eight city officials (Mayor, City Judge, Comptroller, President of the City Council and four councilmen) were increased during their terms of office, subject to a permissive referendum. Thereafter, by petition duly signed and verified and timely filed, qualified electors of the city, in number well in excess of 10% of the total of votes cast in the city for Governor at the 1970 general election (Municipal Home Rule Law, § 24), formally demanded that a referendum be held to test the enactment of the local law. According to the 1974 issue of the Legislative Manual of New York, 25,126 persons voted for Governor in Mount Vernon in 1970. Of this number 12,945 voted for the Republican candidate; 8,559 for the Democrat; 1,369 for the Conservative; 1,372 for the Liberal and the remainder for candidates of other parties. There were 475 ballots which were listed as blank, void and scattering. Two thousand five hundred thirteen valid signa-

tures would have constituted 10% of the votes cast at the last gubernatorial election; 3,819 were actually submitted in the petition to the city council, an amount equal to approximately 15.5% of the gubernatorial vote. When we consider that approximately 51.5% of the votes cast were for the candidate of the predominant political party—and that a fair inference leads to the belief that the minority parties furnished the great bulk of the signatories— we can appreciate that a herculean task was performed in procuring the signatures on the petition. In response to the petition, the city council pulled in its horns and, on April 17, 1974, voted to rescind the local law—as it had a perfect right to do under section 26 of the Municipal Home Rule Law. The local law which repealed the original local law was signed the following day by defendant Petrillo, the Mayor of the City of Mount Vernon. Had the matter ended there, there would have been no case and no appeal. However, not content with the impressive show of hands represented by 3,819 signatures, the city council proceeded—within six days of the recission —to start the ball rolling to adopt a local law increasing the salary of the City Judge alone to the exact amount contemplated by the first local law. This, they reckoned, would vitiate the thrust of the petition, a position with which Special Term concurred, treating it as a matter of law. The petitioners cry "foul". They say it is unfair to expect them to obtain a new set of signatures when a portion of the original local law is substituted—*in haec verba*—for the former full petition. With this contention I am in full accord. With the excesses of Watergate still fresh—and malodorous—in the nostrils of the nation—the distrust visited on governments, large or small, by the electorate, is readily understandable; an action such as this merely serves to exacerbate the situation. Instead of proceeding in this highhanded manner, it might well have behooved the city authorities to treat the petition with the respect it deserved. Section 95 of the General Construction Law reads: "Effect of the repeal of a statute by another statute substantially re-enacting the former The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, modified or amended according to the language employed, and not as new enactments." This statute does not quite answer our question, however, because it is merely a protective statute designed to prevent a hiatus condition during which no law would be in effect. No provision is made therein for partial re-enactment of the repealed law or ordinance. Extensive research has failed to unearth a case in New York on all fours with our factual circumstances, although some touch peripherally on the point (see *Olin v Town of North Hempstead*, 34 Misc 2d 853 [which discusses the power of veto by referendum of the acts of a town board], and *Matter of Russell v Harwood*, 20 Misc 2d 692 [alternate methods employed of submission to referendum]). We are, however, indebted to three of our sister States (Wisconsin, Connecticut and California) for pronouncements on the subject. In *City of Mequon v Lake Estates Co.* (52 Wis 2d 765), the State Supreme Court had for consideration on appeal the question of repeal of an ordinance, a portion of which was immediately re-enacted. Heffernan, J., speaking for the court (citing *State ex rel. Cities Serv. Oil Co. v Board of Appeals*, 21 Wis 2d 516, 527) said (p 771): " 'It is well settled that the effect of the repeal of a statute and its re-enactment at the same time and in substantially the same words is to continue the statute in uninterrupted operation.' " He continued (p 771): "In the instant case the repeal and re-creation of the portions of the ordinance pertaining to the dedication of land or the making of in-lieu payments was simultaneous. Where a statute or ordinance is repealed and re-created in a

simultaneous action, and where a portion of an original ordinance or statute is retained in the re-created enactment in substantially the same form, there is no repeal of the provisions that appeared in the original enactment. The provisions that are not re-enacted are of course repealed". In our case, the recreated portion is in "exactly", not "substantially", the same form, and a period of only six days elapsed between repeal and the commencement of re-enactment. In Connecticut, the State Legislature abolished the Board of County Commissioners of New Haven County, thus effectively—it thought—removing the incumbent commissioners from office; it immediately thereafter created a new board of commissioners, in language as follows: "A board of commissioners for New Haven County is *hereby created,* to be appointed by the General Assembly, and said board shall have all the powers and perform all the duties provided by chapter two, title three, of the General Statutes for county commissioners" *(State ex rel. Birdsey v Baldwin,* 45 Conn 134, 143). In construing this act the Connecticut Supreme Court, in *State ex rel. Birdsey v Baldwin (supra,* p 144 [Granger, J., speaking for an unanimous court]), said: "We have then this condition of things—an act of the legislature repeals by its terms a certain section of the General Statutes and abolishes a board of officers appointed under it, and the same act creates precisely the same board and clothes them with the same powers and duties enumerated in the section repealed. Can this be done? We think not. The act in question contains the elements of its own destruction. It attempts to kill and make alive at the same instant, an impossibility. There must be some appreciable space of time between the repealing act and the re-enactment of the same act. In this case not a second intervened, and there was never a moment when the relators were out of office, or when the office of county commissioners for New Haven County was abolished. For these reasons we advise the Superior Court to render judgment for the State." (See, also, *Reagan v City of Sausalito,* 210 Cal App 2d 618.) A fourth case of interest is that of *Jackson v Denver Producing & Refining Co.* (96 F2d 457). It is at least partially in point. There, a petition was filed to force a referendum on a newly enacted ordinance. Under the guise of an emergency, the City Council of Oklahoma City added a clause to the ordinance after the petition was filed, and claimed the question was moot. Additionally, some 15 months later, the city council enacted a new ordinance identical in all material respects with the one then at issue, except that it contained a repealing clause and an emergency provision that complied with the law. No referendum was held pursuant to the demand in the petition. The Federal court noted: "The right of referendum cannot be defeated and an ordinance which has been suspended cannot be vitalized by failure or refusal to submit the question to the electors. If it could, the right expressly reserved to the people would immediately become a vain and empty nothingness" *(supra,* pp 460–461). There is a right way and a wrong way by which to effect desired results. I think the city chose the wrong way, and that a referendum should be held. In dissenting in this acerbic manner, I do not for one moment impugn the integrity of the City Judge who is the beneficiary of the "new" local law. He may well be entitled to the increase in salary intended for him. My sole objection is to the questionable procedure by which this amendment was carried to fruition.