LAKE CITY CORPORATION, Plaintiff-Appellant,

v.

CITY OF MEQUON, Defendant-Respondent-Petitioner.

Supreme Court

*No. 94–3240. Oral argument December 5, 1996.—Decided January 30, 1997.*

(Also reported in 558 N.W.2d 100.)

For the defendant-respondent-petitioner there were briefs by *John L. DeStefanis, Donald L. Mabry* and *Prieve & Meyer, S.C.*, Milwaukee and oral argument by *John L. DeStefanis*.

For the plaintiff-appellant there was a brief by *Alan Marcuvitz, Andrea Roschke* and *Weiss, Berzowski, Brady & Donahue*, Milwaukee and oral argument by *Andrea Roschke*.

Amicus curiae brief was filed by *Richard A. Lehmann* and *Boardman, Suhr, Curry & Field*, Madison for the Wisconsin Chapter of the American Planning Assocation.

Amicus curiae brief was filed by *Curtis A. Witynski* and League of Wisconsin Municipalities and *Eunice Gibson, James M. Voss* and *City of Madison*, all of Madison, for the League of Wisconsin Municipalities and City of Madison.

¶ 1. N. PATRICK CROOKS, J. The City of Mequon (Mequon) seeks review of a published decision of the court of appeals,[1] which reversed and remanded a judgment of the Circuit Court for Ozaukee County, Joseph D. McCormack, Judge. The court of appeals held that, under Wis. Stat. § 236.13(1)(c) (1991–92),[2] a

---

[1] *Lake City Corp. v. City of Mequon*, 199 Wis. 2d 353, 544 N.W.2d 600 (Ct. App. 1996).

[2] Section 236.13(1)(c) provides: "Approval of the preliminary or final plat shall be conditioned upon compliance

local master plan is consistent with an official map only to the extent the master plan reflects issues encompassed in the official map. Accordingly, the court of appeals held that Mequon's Plan Commission (Plan Commission) improperly denied preliminary plat approval to Lake City Corporation (Lake City) on the grounds that the plat conflicted with an element contained only in the master plan. We conclude that, under § 236.13(1)(c), a master plan is consistent with an official map if any common elements contained in both the master plan and official map are not contradictory. We further conclude that a master plan is consistent with an official map even if the master plan contains additional elements that the official map does not. We therefore hold that a city plan commission may rely on an element contained solely in a master plan to reject plat approval.[3] Thus, we reverse the decision of the court of appeals.

with. . .[a]ny local master plan which is consistent with any. . .official map adopted under s. 62.23."

All future references are to the 1991–92 Statutes unless otherwise indicated.

[3] In this case, Mequon delegated its authority to review plats for subdivisions to the Plan Commission under Wis. Stat. § 236.10(3). Accordingly, this case deals with the authority of a city plan commission to deny plat approval. However, our holding similarly applies to a municipality that has retained plat approval authority because it has not delegated such authority or has not created a plan commission. This is because § 236.13 (1)(c) applies generally to plat approval, regardless of the entity authorized to review plats.

## I.

¶ 2. In 1977, Lake City purchased 59 acres of land located in Mequon, Wisconsin.[4] In March 1984, Lake City petitioned Mequon to rezone its property from RS–2 and RS–2(OH) zoning classifications to RS–3(OGP), RS–4(OGP), and C–3 zoning classifications. This proposed rezoning would allow Lake City to construct duplex structures on approximately 16 acres, and single family units on approximately 30 acres. Lake City could use the remaining 10 acres for commercial development. Mequon, by action of its common council, voted to rezone the property in substantially this manner.[5]

¶ 3. In the summer of 1992, Mequon began the process of comprehensively revising its master plan and zoning ordinances, due to growth in the city. According to Mequon, it had informed the community of its new planning goals by 1993; therefore, developers began submitting plans for dormant projects to the Plan Commission in an attempt to gain approval before Mequon completed the revision of its master plan and zoning ordinances.

¶ 4. It appears that Lake City was one such developer. Lake City had taken no affirmative steps to develop its property since 1984, when Mequon had rezoned the property as requested. However, on February 1, 1993, Lake City applied for preliminary plat approval. The plat provided for 33 single family residential lots of no less than 30,000 square feet in the RS–3 area, and 18 lots consisting of 56 units in the

---

[4] The property is on the north side of West Mequon Road, and east of 76th Street (Wauwatosa Road).

[5] The city council rezoned the property as RS–3(OGP), RS–4 (OGP), and C–2 classifications.

multi-family RS–4 area.[6] The plat conformed with existing zoning ordinances.

¶ 5. The Plan Commission was originally scheduled to consider Lake City's proposed plat for approval on March 15, 1993, but it tabled this matter until March 29, 1993. On March 29, the Plan Commission was also scheduled to consider a resolution proposing to amend Mequon's land use map, or comprehensive zoning plan, contained in Mequon's master plan. If adopted, the resolution would amend an area of the land use map which included Lake City's property, by limiting such area to residential uses of 1.5 acre minimum lot size per dwelling unit.

¶ 6. On March 29, 1993, the Plan Commission voted to adopt this amendment. The Plan Commission then voted to deny Lake City's request for preliminary plat approval, because the proposed plat conflicted with the newly adopted amendment to the master plan. In particular, Lake City's plat proposed a total of 56 residential units, whereas the revised master plan allowed for a maximum capacity of 37 residential units.[7]

¶ 7. Lake City commenced this action on April 27, 1993, pursuant to Wis. Stat. § 236.13(5). The circuit court held that under Wis. Stat. §§ 62.23(2), 62.23(3)(b), and 236.13(1)(c), the Plan Commission had authority to deny Lake City's application for plat approval based upon the newly enacted amendment to the master plan. The circuit court concluded that its

[6] Lake City did not propose to develop the C–2 area of the property.

[7] On June 8, the city council passed a moratorium on new development. In addition, the city council subsequently rezoned the RS–3 and RS–4 areas of Lake City's property, consistent with the amendment to the master plan.

interpretation of these statutes was supported by the following dicta in *Reynolds v. Waukesha County Park & Planning Comm'n,* 109 Wis. 2d 56, 324 N.W.2d 897 (Ct. App. 1982): "A 'local master plan' denotes a plan adopted by a municipal plan commission or the governing body of a municipality. [Citation omitted.] No such plan existed in the instant case. Had there been one, only [the village of] Butler would have had authority to use it as a basis for disapproval of the plat." *Id.* at 63.

¶ 8. The court of appeals reversed. Relying primarily on *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n,* 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App.), *review denied,* 508 N.W.2d 421 (1993) (hereinafter "*Gordie Boucher*"), the court concluded that Wis. Stat. § 236.13(1)(c) authorizes a city plan commission "to look towards master plans only to the limited extent that the master plan reflects issues encompassed in the locality's official map." *Lake City Corp.,* 199 Wis. 2d at 360. The court further determined that the legislative history of § 236.13(1)(c) supported its decision, because it concluded that the legislature modified this statute in 1979 to "eliminate any chance that a plan commission could use its master plan in this manner." *Id.* at 363.

II.

¶ 9. The sole issue presented for review is whether Wis. Stat. § 236.13(1)(c) authorizes a city plan commission to deny plat approval based solely upon an element contained in a master plan. Statutory interpretation is a question of law. *E.g., Stockbridge School Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd.,* 202 Wis. 2d 214, 219, 550

161

N.W.2d 96 (1996); *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). This court reviews questions of law *de novo*, without giving deference to the decisions of the lower courts. *E.g., Jungbluth*, 201 Wis. 2d at 327; *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996).

¶ 10. The goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *E.g., Stockbridge School Dist.*, 202 Wis. 2d at 219; *Hughes*, 197 Wis. 2d at 978. To achieve this goal, we first resort to the plain language of the statute itself. *E.g., Jungbluth*, 201 Wis. 2d at 327; *In re Kyle S.-G.*, 194 Wis. 2d 365, 371, 533 N.W.2d 794 (1995). In the absence of statutory definitions, this court construes all words according to their common and approved usage, which may be established by dictionary definitions. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995) (quoting *State v. Gilbert*, 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 514 (1983)).[8] In addition, it is a basic rule of statutory construction that effect is to be given to every word of a statute if possible, so that no portion of the statute is rendered superfluous. *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 164, 288 N.W.2d 129 (1980); *State v. Wachsmuth*, 73 Wis. 2d 318, 324, 243 N.W.2d 410 (1976). It is also a fundamental rule of statutory construction that any result that is absurd or unreasonable must be avoided. *E.g., Jungbluth*, 201 Wis. 2d at 327 (citing *Green Bay Redev.*

---

[8] However, this general rule of statutory construction does not apply to technical words and phrases that have a peculiar meaning. *See State v. Martin*, 162 Wis. 2d 883, 904, 470 N.W.2d 900 (1991).

*Auth. v. Bee Frank Inc.*, 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984)).

¶ 11. If the meaning of a statute is clear from its language, we are prohibited from looking beyond such language to ascertain its meaning. *Stockbridge School Dist.*, 202 Wis. 2d at 220 (quoting *Jungbluth*, 201 Wis. 2d at 327). However, if a statute does not clearly set forth the legislative intent, we must look at the history, scope, context, subject matter, and object of the statute. *Id.*; *In re Kyle S.-G.*, 194 Wis. 2d at 371.

¶ 12. We therefore turn to the language of Wis. Stat. § 236.13(1)(c), to determine whether it clearly sets forth the intent of the legislature. Section 236.13(1)(c) provides in pertinent part: "Approval of the preliminary or final plat shall be conditioned upon compliance with. . .[a]ny local master plan which is consistent with any. . .official map adopted under s. 62.23." The parties dispute the meaning of "consistent" in § 236.13(1)(c). Lake City contends that any portion of a master plan that deals with issues not covered by an official map is inconsistent with the official map. Under this interpretation, a city plan commission may deny plat approval based upon an element contained in a master plan only if such element is similarly contained in an official map.

¶ 13. Mequon claims that Lake City's proposed interpretation of Wis. Stat. § 236.13(1)(c) renders the words "master plan" superfluous. Mequon further contends that "[i]f the legislature had intended that only issues addressed in an official map could form the basis of a denial of a plat, then it need have only referenced the 'official map' in Section 236.13(1)(c), Stats." (Petitioner's brief at 9.) Accordingly, Mequon asserts that this court must interpret "consistent" in § 236.13(1)(c)

as requiring that any issues addressed in both a master plan and an official map are not "otherwise inconsistent." (Petitioner's brief at 10.) If this requirement is met, Mequon claims that a master plan is consistent with an official map even if the master plan addresses issues not contained in the official map.

¶ 14. We agree with Mequon's interpretation of the plain language of Wis. Stat. § 236.13(1)(c). The word "consistent," according to common and approved usage, means "[i]n agreement; compatible." *The American Heritage Dictionary* 402 (3d ed. 1992).[9] In other words, "consistent" means "not contradictory." Under a common sense application of this definition to the present case, a master plan is consistent with an official map if they share common elements, meaning that any elements addressed by both the master plan and official map are in agreement.

¶ 15. However, it does not necessarily follow that a master plan is inconsistent with an official map if the master plan contains elements that the official map does not. A master plan, pursuant to Wis. Stat. § 62.23(2), is likely to contain additional elements.[10]

---

[9] The legislature did not define the word "consistent" in Wis. Stat. § 236.13.

[10] An official map may show only streets, highways, historic districts, parkways, parks, playgrounds, the location of railroad rights-of-way, waterways and public transit facilities. Wis. Stat. § 62.23(6)(b). However, under § 62.23(2), a master plan:

[M]ay include, among other things **without limitation because of enumeration,** the general location, character and extent of streets, highways, freeways, street grades, roadways, walks, bridges, viaducts, parking areas, tunnels, public places and areas, parks, parkways, playgrounds, sites for public buildings and structures, airports, pierhead and bulkhead lines, waterways, routes for railroads and buses, historic districts, and the general location and extent of sewers, water conduits and other public utilities whether

164

Yet, a master plan is not incompatible with an official map simply because the master plan contains additional elements. So long as any issues addressed in both a master plan and an official map are not contradictory, the master plan is consistent with the official map.

¶ 16. We additionally accept Mequon's interpretation because it gives effect to the words "master plan" in Wis. Stat. § 236.13(1)(c), whereas Lake City's interpretation does not. Under Lake City's interpretation, a plan commission can rely on a master plan only to the limited extent that it reflects issues contained in an official map. Accordingly, the words "master plan" are rendered superfluous, because the master plan serves as nothing more than a conduit to the official map. If the legislature had intended such a result, it need not have included the words "master plan" in the statute; it could have simply included the words "official map."

¶ 17. We further reject Lake City's proffered interpretation because it leads to an illogical result. Under Wis. Stat. § 236.11, a final plat is entitled to approval only if it "conforms substantially. . .to local plans. . .adopted as authorized by law. . . ."[11] The refer-

---

privately or publicly owned, the acceptance, widening, narrowing, extension, relocation, removal, vacation, abandonment or change of use of any of the foregoing public ways, grounds, places, spaces, buildings, properties, utilities, routes or terminals, the general location, character and extent of community centers and neighborhood units, the general character, extent and layout of the replanning of blighted districts and slum areas, and a comprehensive zoning plan.

Wis. Stat. § 62.23 (emphasis added).

[11] "When multiple statutes are contained in the same chapter and assist in implementing the chapter's goals and policy, the statutes should be read *in pari materia* and harmonized if possible." *In re Angel Lace M.*, 184 Wis. 2d 492, 512, 516 N.W.2d

ence in § 236.11 to local (master) plans is not qualified by reference to an official map. Accordingly, if we were to accept Lake City's interpretation, this would result in the following: under § 236.11 a plan commission would have authority to deny final plat approval based on any element contained in a master plan, whereas under § 236.13(1)(c) it would have authority to deny preliminary plat approval based on an element contained in a master plan only if the element was similarly contained in an official map. Not only is this result absurd, but it also directly contradicts § 236.13(1)(c). Section 236.13(1)(c) explicitly applies to preliminary and final plats, and therefore indicates that a plan commission's authority to review both preliminary and final plats under ch. 236 should be substantially similar.

¶ 18. Application of Lake City's interpretation would lead to an additional illogical result. Pursuant to Wis. Stat. §§ 62.23(2), (3), and (6)(b), a city is not required to have an official map, nor is a municipality prohibited from having a master plan in the absence of an official map. Under Lake City's interpretation of Wis. Stat. § 236.13(1)(c), if a municipality has only a master plan, then the master plan could never serve as the basis for the denial of preliminary plat approval, since none of the issues addressed in the master plan would be similarly addressed in the (non-existent) official map. Therefore, in these circumstances, § 236.13(1)(c) would be rendered a nullity. Again, this result defies common sense, because the plan commis-

---

678 (quoting *In re R.W.S.*, 162 Wis. 2d 862, 871, 471 N.W.2d 16 (1991)). "In pari materia" refers to statutes that deal with the same subject matter or have the same common purpose. *Id.* at 512 n.13. Sections 236.11 and 236.13(1)(c) both deal with plat approval, and therefore should be construed together.

sion could then deny final plat approval based upon any element contained in the master plan under Wis. Stat. § 236.11.

¶ 19. We also conclude that language in *Reynolds* supports Mequon's interpretation of Wis. Stat. § 236.13(1)(c). Specifically, the court stated: "No such [master] plan existed in the instant case. Had there been one, only [the village of] Butler would have had authority to use it as a basis for disapproval of the plat." *Reynolds*, 109 Wis. 2d at 63. The *Reynolds* court therefore indicated that where a local master plan exists, a municipality has the authority to rely on it to deny plat approval.[12]

¶ 20. Finally, we conclude that the 1957 interpretive commentary to Wis. Stat. § 236.13 supports Mequon's interpretation of this statute. The interpretive commentary states: "The master plan standing alone has no legal teeth. But for plat approval purposes 236.13(1) puts legal teeth into the relatively few master plans that do exist in this state." Jacob H. Beuschler, Interpretive Commentary [1957], Wis. Stat. Ann. § 236.13 (West 1987 & Supp. 1996).[13] Mequon's interpretation is consistent with the legislature's intent to put "legal teeth" into master plans, because it

[12] We agree with Lake City and the court of appeals that the issue the *Reynolds* court addressed was what entity had the authority to rely on the master plan—the village or the county park commission. Nonetheless, the *Reynolds* court's statement supports the assertion that where a local master plan exists, a municipality may use it as a basis to deny plat approval.

[13] The interpretive commentary to Wis. Stat. § 236.13 was cited with approval by this court in *State ex rel. Columbia Corp. v. Town Board of the Town of Pacific*, 92 Wis. 2d 767, 286 N.W.2d 130 (Ct. App. 1979).

allows city plan commissions to continue to rely on master plans to deny plat approval.

¶ 21. The court of appeals concluded that this interpretive commentary is no longer persuasive in light of the 1979–80 amendment to Wis. Stat. § 236.13(1)(c). In particular, the court of appeals determined that, by recreating § 236.13(1)(c) in 1955, the legislature intended to provide plan commissions with the power to give master plans equal weight with ordinances or official maps when reviewing a plat. *Lake City Corp.*, 199 Wis. 2d at 362. However, the court of appeals further determined that:

> [T]wenty years later, as master plans became more common, the dynamics of the equation changed and the legislature apparently reasoned that the total risk to landowners and developers no longer outweighed the benefits. Whatever, the statute was modified to eliminate any chance that a plan commission could use its master plan in this manner.

*Id.* at 362–63. We have reviewed the legislative history of the 1979–80 amendment, and conclude that although the text of the amendment standing alone arguably supports the court of appeals' determination, the bill drafting file indicates that the legislature did not intend to drastically revise § 236.13(1)(c).

¶ 22. Chapter 236 was repealed and recreated by section 4, chapter 570, Laws of 1955. Wis. Stat. § 236.13(1)(c), as recreated in 1955, provided: "Approval of the preliminary or final plat shall be conditioned upon compliance with. . .any local master plan or official map." In 1979, Representative Jonathan Barry introduced 1979 Assembly Bill 885, which proposed to revise § 236.13(1)(c) in the following manner: "Approval of the preliminary or final plat shall be con-

ditioned upon compliance with. . . [a]ny local master plan which is consistent with any plan adopted under s. 236.46 or official map adopted under s. 62.23." In his drafting request, Rep. Barry indicated: "In s. 236.13(1)(c) include reference to s. 236.46 and 62.23." In addition, an analysis by the Legislative Reference Bureau ("LRB") stated: "The bill makes clear that a plat is subject to approval by a municipality which has adopted an official map only if the official map is adopted according to the statutory procedure." Neither Rep. Barry nor the LRB explained the meaning of the "consistent with" language that is the crux of this case. Instead, these comments indicate that Rep. Barry intended only to make it clear that in order for a plan commission to deny approval based on a master plan or official map, the plan or map must be properly adopted under the appropriate state law.

¶ 23. Although Rep. Barry may have intended the changes to be minor, it appears that the proposed amendment became more complicated and confused throughout the drafting process in the legislature. In another document contained in the drafting file, someone wrote "what does this mean?" above Rep. Barry's proposed revision to Wis. Stat. § 236.13(1)(c). Most likely in response to such confusion, Rep. Barry offered a clarifying amendment to his original bill, which proposed to change the language as follows: "Approval of the preliminary or final plat shall be conditioned upon compliance with. . .local plans and ordinances adopted as authorized by law." *See* Assembly Amendment 3 to 1979 Assembly Bill 885.

¶ 24. However, this portion of Assembly Amendment 3 was superseded by Senate Amendment 2, in which the legislature adopted the consistency language

of Wis. Stat. § 236.13(1)(c) as it appears today. Accordingly, it appears that the legislature considered several versions of the amendment, including this separate version that required the master plan to be "consistent with" an official map. Nothing in the drafting file indicates the legislature's reasoning for adopting the "consistent with" language of Senate Amendment 2. Nonetheless, we consider it relevant that the drafting file does not indicate that the legislature intended, by adopting Senate Amendment 2, to reduce drastically the power of plan commissions to rely on master plans when denying plat approval. Thus, in the absence of anything to the contrary, we conclude that the legislature did not intend to pull the legal teeth out of master plans. We therefore consider the 1957 interpretive commentary to be persuasive, and in support of our interpretation of the "consistent with" language of Wis. Stat. § 236.13(1)(c).

### III.

¶ 25. Lake City argues that Mequon's interpretation of Wis. Stat. § 236.13(1)(c) ignores the basic legal distinction between enacted legislation and an administrative recommendation. Lake City contends that "the zoning ordinance, the legislation enacted after recommendations, notice and public hearings, must control over the master plan, an administrative planning tool." (Respondent's brief at 14.) We have carefully considered this argument and conclude that it is not persuasive here.

¶ 26. Lake City correctly points out that the adoption of a master plan is an administrative function of a city plan commission, *Heider v. Common Council of Wauwatosa*, 37 Wis. 2d 466, 476, 155 N.W.2d 17 (1967), whereas adoption of zoning ordinances is a legislative

function. *Buhler v. Racine County*, 33 Wis. 2d 137, 146, 146 N.W.2d 403 (1966). However, this does not necessarily mean that zoning ordinances must always prevail over master plans when the two are inconsistent.

¶ 27. In Chapter 236, the legislature has delegated the power to approve subdivision plats to municipalities. *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 61, 327 N.W.2d 642 (1983) (citing *Mequon v. Lake Estates Co.*, 52 Wis. 2d 765, 773, 190 N.W.2d 912 (1971)) (hereinafter *"Storms"*). The legislature has specified the extent of such authority in ch. 236. In particular, the legislature has given municipalities the discretion to delegate their plat approval power to city plan commissions. Wis. Stat. § 236.10(3). Where a municipality has delegated such power, as is the case here, the city plan commission has the power to deny plat approval based on an element contained in a master plan under Wis. Stat. § 236.13(1)(c).

¶ 28. However, in Wis. Stat. § 236.13(1)(c), the legislature did not indicate that a plan commission's ability to rely on a master plan is limited by zoning ordinances. If the legislature had intended this, it could have easily qualified the language in § 236.13(1)(c) by requiring that a master plan be consistent with zoning ordinances in order to serve as a basis for denial of plat approval. It is clear that the legislature knew how to accomplish this goal, since it included similar qualifying language in this very same statute. *See* § 236.13(1)(c).[14] Furthermore, the legisla-

---

[14] In Wis. Stat. § 236.13(1)(c), the legislature clearly provided that, in order to serve as a basis for denial of plat approval, a master plan must be "consistent with any plan adopted under s. 236.46 or official map adopted under s. 62.23."

171

ture also has specified that its grant of zoning power to city councils "may not be deemed a limitation on any power granted elsewhere." Wis. Stat. § 62.23(7)(a). Thus, because the statutes do not indicate that the legislature intended zoning ordinances to limit a city plan commission's authority to deny plat approval based on a master plan, we are not persuaded by Lake City's argument.

¶ 29. This, however, does not mean that a plan commission has extra-legislative power to override the common council. Minimum lot size, which is at issue here, is an area of shared power that may be regulated by a municipality through its authority under ch. 236, or through the enactment of zoning ordinances by the applicable zoning authority. Specifically, in *Storms*, this court rejected the argument that a municipality may not regulate minimum lot size under Wis. Stat. § 236.45 because only zoning authorities may regulate this area.[15] 110 Wis. 2d at 67. Instead, the court found that zoning and subdividing are complementary land planning devices. *Id.* at 68. As the *Storms* court stated: "The fact that minimum lot size may also be regulated by zoning ordinances does not detract from the power of local governments to exercise such power pursuant to ch. 236., Stats." *Id.* at 69. The court further specified:

---

[15] Although the *Storms* court considered whether a municipality has the authority to adopt an ordinance regulating minimum lot size under Wis. Stat. § 236.45, the court's discussion of the authority of planning agencies to regulate minimum lot size under ch. 236 is nonetheless persuasive here. This case deals with the similar issue of whether a planning agency has the power to regulate minimum lot size under Wis. Stat. § 236.13(1)(c) through reliance on a master plan.

> Zoning regulations and subdivision controls are not only adopted and administered by separate agencies, but are authorized by separate enabling acts which may be unlike in their requirements for enactment of regulations and their procedure for enforcement or relief. **Thus, the authority of the agency assigned to plat review may not be limited by the zoning regulations.**

*Id.* (quoting 4 Anderson, *American Law of Zoning*, § 23.21 at 90 (2d ed. 1977)) (emphasis added). Accordingly, the court held that "[a]s long as the regulation is authorized by and within the purposes of ch. 236, the fact that it may also fall under the zoning power does not preclude a local government from enacting the regulation pursuant to the conditions and procedures of ch. 236." *Id.* at 70–71. Thus, as the *Storms* court decided, in the area of minimum lot size regulation, the power of a plan commission which is authorized to review plats is not limited or detracted by zoning regulations.

¶ 30. Lastly, we conclude that *Gordie Boucher* is distinguishable, and therefore does not support the proposition that zoning ordinances must prevail in this case. In *Gordie Boucher*, the court of appeals held that the plan commission of Madison exceeded its jurisdiction when it conditioned approval of plaintiff's certified survey map ("CSM") on compliance with an element contained in Madison's master plan. 178 Wis. 2d at 80. However, the property at issue in *Gordie Boucher* was located outside of city limits, in Madison's extraterritorial plat approval jurisdiction. *Id.* at 80–82. Therefore, regulation of such land involved not only the planning and zoning authority of the city of Madison, but also the planning and zoning authority of the cities and towns within Madison's extraterritorial planning juris-

diction and the Dane County Board of Supervisors. *Id.* at 87. In addition, regulation of this property involved Wis. Stat. § 59.97, the county planning and zoning enabling statute, Wis. Stat. § 62.23(7a), the Extraterritorial Zoning Enabling Act, and Wis. Stat. § 236.13.[16] *Id.* This is distinguishable from the present case, which involves land located within Mequon's city limits, and therefore implicates only Mequon's zoning ordinances and Mequon's master plan. Accordingly, this case does not require us to balance the authority of a county and several municipalities, nor does it require us to harmonize ch. 236 with other planning and zoning enabling acts, as was the situation in *Gordie Boucher*. We therefore conclude that *Gordie Boucher* is not persuasive here.

¶ 31. In summary, we hold that Wis. Stat. § 236.13(1)(c) authorizes a city plan commission to deny approval of a plat that conflicts with a local master plan, so long as any common elements contained in both the master plan and official map are not contradictory. We further conclude that a master plan is consistent with an official map even if the master plan contains additional elements that the official map does not. We therefore hold that a city plan commission may rely on an element contained solely in a master

---

[16] Under §§ 62.23(7)(a) and (c), a city's common council may enact an extraterritorial zoning ordinance, provided that it is approved by a majority of the extraterritorial zoning committee, which is comprised of representatives of the city plan commission and the affected cities and towns. *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 88, 503 N.W.2d 265 (Ct. App.), *review denied*, 508 N.W.2d 421 (1993). Madison had not enacted such an ordinance. *Id.* at 88. Accordingly, the land was covered by a Dane County ordinance which permitted plaintiff's proposed use.

plan to reject plat approval. Applying this holding to the present case, we conclude that the Plan Commission had the authority to deny approval of Lake City's proposed preliminary plat, because this plat conflicted with Mequon's newly revised master plan. The cause is remanded to the circuit court for the purpose of reinstatement of its judgment

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.