WILLIAM R. BECHTEL, Secretary, Department of Local Affairs andDevelopment
You ask my opinion concerning the extent to which condominium projects under the Unit Ownership Act, ch. 703, Stats., are required to comply with the land platting and subdivision approval requirements of ch. 236, Stats.
The answer to your question depends upon whether the condominium involved falls within the statutory definition of "subdivision" as set forth in sec. 236.02 (8) Stats.
"Subdivision" is defined in sec. 236.02 (8), Stats., as follows:
 "`Subdivision' is a division of a lot, parcel or tract of land by the owner thereof or his agent for the purpose of sale or of building development, where:
 "(a) The act of division creates 5 or more parcels or building sites of 1 1/2 acres each or less in area; or
 "(b) Five or more parcels or building sites of 1 1/2 acres each or less in area are created by successive divisions within a period of 5 years."
Section 236.03 (1), Stats., reads: *Page 176 
 "(1) Any division of land which results in a subdivision as defined in s. 236.02 (8) (a) shall be, and any other division may be, surveyed and a plat thereof approved and recorded as required by this chapter to map or survey purporting to create divisions of land or intending to clarify metes and bounds descriptions may be recorded except as provided by this chapter."
Section 236.31 (2), Stats., further provides that an assessor's plat may be required, at the expense of the subdivider or his agent, if a subdivision is created by successive divisions, under sec. 236.02 (8) (b), Stats.
A condominium, sometimes referred to as a "horizontal property regime," is an estate in real property typically consisting of ownership in severalty of a part of a residential apartment-type building combined with an undivided interest-in-common of certain other portions of the property, including the land upon which the building stands. 31 C.J.S. Condominiums, sec. 145, et seq. However, there is nothing which necessarily prevents a condominium project from consisting of a number of separate individually owned dwelling units located on a single commonly owned parcel of land, Ackerman v. Spring Lake of Broward, Inc. (Fla. 1972), 260 So.2d 264. Finally, it is also technically possible, at least under ch. 703, Stats., to have a condominium project where the land located under the individually owned units is not a part of the commonly held property.
The possible application of ch. 236, Stats., to a condominium project would only arise in the last instance above, or where a condominium otherwise fell within the definition of "subdivision" by virtue of being the fifth in a succession of land divisions for condominium purposes. However such circumstances would probably seldom arise. Thus, it is my opinion that the typical condominium project, i.e., where individually owned units rest on a single commonly owned parcel of land, is not required to comply with the land platting and subdivision approval requirements of ch. 236, Stats.
I am aware that some confusion has existed as to whether the typical condominium project is subject to ch. 236, Stats. To some extent, such confusion has resulted from the fact that condominium developments may not only physically resemble the traditional *Page 177 
subdivision, the only clear-cut distinction being the ownership of land in common, but they may also present the same problems affecting the public health, safety and general welfare which the subdivision regulations of ch. 236, Stats., are designed to combat. See sec. 236.01, Stats. Proper statutory interpretation of the law has also been hindered by the absence of any provisions in either ch. 236 or 703, Stats., specifically interrelating the provisions of the two chapters, while at the same time both chapters use similar statutory language.
For instance, under sec. 703.04, Stats., each condominium unit, together with its undivided interest in the common areas and facilities, constitutes real property "for all purposes." Further, under sec. 990.01 (18) and (35), Stats. "real property" and "land" have identical statutory definitions. Finally, sec.703.22 (1), Stats., provides:
 "(1) Each unit and its percentage of undivided interest in the common areas and facilities shall be deemed to be a parcel and shall be subject to separate assessments and taxation by each assessing unit and special district for all types of taxes authorized by law including but not limited to special ad valorem levies and special assessments. Neither the building, the property nor any of the common areas and facilities shall be deemed to be a parcel separate from the unit." (Emphasis added.)
Thus, it is possible to argue that a condominium is a division of real property for the purposes of sale or building development where the act of division may create five or more parcels or building sites. The acreage of each parcel or building site would presumably be determined by dividing the total commonly held acreage by the number of parcels.
Regardless of the apparent neatness of the foregoing statutory construction and the admitted logic of applying subdivision standards to condominium projects which resemble traditional land divisions, the fact remains that in the typical condominium development under ch. 703, Stats., the land itself is not divided, while the subdivision of land under ch. 236, Stats., does involve the division of the land itself, as well as the tenements, hereditaments and rights thereto and interests therein. *Page 178 
In addition, the use of the term "parcel" in sec. 703.22, Stats., to describe the condominium unit and its undivided interest in common areas and facilities, is clearly intended only to define the status of each individual condominium for assessment and tax levy purposes. Such a tax provision was designed to meet federal regulations covering condominium eligibility for FHA mortgage insurance, 12 U.S.C. sec. 1715y, and nothing appears in ch. 703, Stats., to suggest that the legislature intended any broader application of the term.
Chapter 703, Stats., is an act complete in itself requiring nothing further to assist in its implementation. The Act applies only to property voluntarily submitted to the provisions of the chapter by duly executed and recorded "declaration." Secs. 703.02
(9) and 703.03, Stats. The chapter contains its own provisions for removal of property from the terms of the Act, as well as for subsequent resubmission of such property. Secs. 703.06 (3),703.16, 703.17, and 703.26, Stats. More importantly, perhaps, the chapter establishes its own separate minimal requirements concerning the filing of a "plat of survey of the land" in the condominium development. Sec. 703.13, Stats. Where a condominium act is complete in itself, it is unnecessary to go elsewhere to fill in any requisites to make the act work. Kaufman BroadHomes of Long Island, Inc. v. Albertson (1972), 73 Misc. 2d 84,341 N.Y.S. 2d 321, 322. And in some instances, such as the case of the simple conversion of existing apartments into condominiums, subdivision approval would clearly appear inappropriate. See Maplewood Village Tenants Association v.Maplewood Village (1971), 116 N.J. Super. 372, 282 A.2d 428.
There is an apparent need to relate the requirements of ch. 236, Stats., at least to those condominium developments which can only be distinguished from land subdivisions on the basis of the manner in which legal title in development property is held. Such developments affect many of the same public interests and may have the same impact on surrounding areas as the more traditional subdivision. However, until such time as the legislature specifically addresses the question of the extent to which such condominium projects should be subjected to the platting and subdivision approval requirements of ch. 236, Stats., it will be possible for such projects to avoid such statutory requirements unless they actually *Page 179 
involve divisions of land which constitute a subdivision under the provisions of sec. 236.02 (8), Stats.
You next inquire as follows:
Sections 236.16 (1) and (2) and 236.20 (4) (d), Stats., permit local ordinances to vary the statutory requirements. What, if any, are the limits imposed upon local governments enacting ordinances varying requirements?
It is first necessary to consider the statutory context in which your question arises. Section 236.16 (1), Stats., which establishes the minimum width and area requirements for each lot in a subdivision, further provides:
 ". . . In municipalities, towns and counties adopting subdivision control ordinances under s. 236.45, minimum lot width and area may be reduced to dimensions authorized under such ordinances if the lots are served by public sewers."
Section 236.16 (2), Stats., which establishes minimum street width requirements for a subdivision, further provides:
 ". . . but no full street shall be less than 60 feet wide unless otherwise permitted by local ordinance. . . ."
Section 236.20 (4) (d), Stats., requires that each lot in a subdivision have access to a public or private street "unless otherwise provided by local ordinance."
62 OAG 315 (1973) contains a general discussion of the circumstances under which the statutory platting standards set forth in these sections may be waived or varied. That opinion is equally applicable here.
With respect to sec. 236.16 (1), Stats., any municipality, town or county may reduce minimum lot and area requirements only if it has enacted a subdivision control ordinance pursuant to sec.236.45, Stats., and only if the lots involved are served by public sewers. Otherwise, the minimum requirements stated in sec.236.16 (1), Stats., are applicable. Where a local government unit which has adopted a local subdivision control ordinance shares overlapping approval authority with one which has not and the lots involved are served by public sewers, the requirements of sec. 236.16 (1) may be unilaterally reduced in accordance with the *Page 180 
duly enacted subdivision control ordinance. Where either the subdivision control ordinance or some other local ordinance of one of the approving authorities establishes more restrictive standards than those stated in sec. 236.16 (1), Stats., the most restrictive requirement is applicable. Sec. 236.13 (4), Stats. See 62 OAG 315 (1973) at 323.
However, the requirements of secs. 236.16 (2) and 236.20 (4) (d), Stats., may be altered by "local ordinance," which may be, but need not be, a subdivision control ordinance. In these sections, the legislature is referring only to "local ordinances" of cities, villages and towns. 62 OAG 315 at 323-324. Only where a county has adopted a sec. 236.45 subdivision control ordinance with provisions more restrictive than secs. 236.16 (2) and 236.20
(4) (d) would the county ordinance prevail over the local ordinance. Sec. 236.13 (4), Stats.
As stated in 62 OAG 315, at 317-318, there are three methods by which the provisions of secs. 236.16 (1) and (2) and 236.20 (4) (d) may be varied by local ordinance or local subdivision control ordinance, i.e., affirmative provision, variance and special exception.
1. Affirmative provision. The minimum lot width and area requirements stated in sec. 236.16 (1), Stats., may be varied by an affirmative provision in the local subdivision control ordinance establishing specific reduced requirements. Similarly, the minimum street width requirement stated in sec. 236.16 (2), Stats., and the street access requirement stated in sec. 236.20
(4) (d) may be reduced by affirmative provisions in a city, village or town ordinance, or made more restrictive by affirmative provisions in such ordinances or in the county subdivision control ordinance.
2. Variance. Municipalities possess broad authority under sec.236.45, Stats., to enact provisions allowing variances to the terms of their subdivision control ordinances. City of Mequon v.Lake Estates Company (1971), 52 Wis.2d 765, 774, 190 N.W.2d 912. The purpose of variance provisions is to protect against individual hardship and to provide the flexibility of procedure necessary to give relief against unnecessary and unjust invasions of the right of private property. 8 McQuillin, Mun. Corp. (3rd Ed.), 1965 Rev. Vol., p. 512, sec. 25.160. This protection and flexibility is as necessary in the regulation of subdivisions as in the regulation of *Page 181 
land use through zoning laws. As a practical matter, however, it is important to recognize that the legitimate application of variances is limited. The variance provision must establish a standard to govern the grant of variances so that the exercise of discretion by the agency granting the variance will not be tantamount to legislation. McQuillin, supra, p. 521-522, sec. 25.161. In the context of zoning law, the standard to be applied in granting variances is normally phrased in terms which require the showing of "unnecessary hardship or practical difficulty." See secs. 59.97 (7) (c), 60.75 (4), 61.35 and 62.23 (7) (e) 7, Stats. Although sec. 236.45, Stats., is not similarly explicit, the same or a similar uniform standard is obviously necessary to govern a grant or denial of a variance from the terms of a subdivision control ordinance. See McQuillin, supra, secs. 25.166 and 25.167. In this regard, it can also be pointed out that the circumstances giving rise to a claimed variance must be peculiar to the particular property involved, and involve more than loss of expected profits or inconvenience, since if the hardship is common to all land in the area, some change in the ordinance itself and not merely a variance must be sought. McQuillin, supra, secs. 25.167 and 25.168.
3. Special Exception. A special exception or conditional use allows a property owner "`to put his property to a use which the ordinance expressly permits' when certain conditions have been met." State ex rel. Skelly Oil Company v. Common Council, City ofDelafield (1973), 58 Wis.2d 695, 703, 207 N.W.2d 585, at 701, citing 2 Rathkopf, The Law of Zoning and Planning (1968), p. 54-4. Through use of this flexible device in local ordinances, the designated agency may grant special exceptions to the terms of the ordinance in harmony with its general purpose and intent only where it is shown that the particular property involved meets the conditions, specifically set forth in the ordinance, which are deemed to justify such special exception.
With this brief general background in mind, it is clear that within the limitations previously discussed an appropriate ordinance may contain a variance provision which may permit the reduction of one or more of the requirements set forth in secs.236.16 (1) (2) and 236.20 (4) (d), Stats. There need be no specific reference in such ordinances to these sections of ch. 236, Stats., as long as the ordinance clearly treats the same subject matter. Likewise, since a condominium project may be a *Page 182 
subdivision within the purview of ch. 236, Stats., no direct reference need be made to condominium projects. The above discussion of the means by which the requirements of secs. 236.16
(1) and (2) and 236.20 (4) (d), Stats., may be reduced would be applicable in all respects to such condominiums.
Finally, you ask a number of questions concerning a specific city subdivision ordinance provision, which reads essentially as follows:
 "Sec. 18.11 Variances. When in the judgment of the Plan Commission it would be inappropriate to apply literally a provision of this chapter because the subdivision is part of a planned residential development as defined in section 17.03 (72), M.C. of the Municipal Code, is located outside the corporate limits or because extraordinary hardship would result, it may waive or vary such provisions so that substantial justice may be done and the public interest secured, provided that in no event shall the requirement of filing and recording the plat or survey map be waived."
Most of your questions concerning this provision have already been answered by my response to your previous questions. I have rephrased your remaining questions for clarity and conciseness. Thus rephrased, your question asks whether this ordinance provision may be viewed as authorizing or forming the basis for the grant of a variance from the requirements of sec. 236.16 (1) and (2) or sec. 236.20 (4) (d), Stats.
Hardship. If the subdivision control ordinance, of which the above provision is a part, otherwise purports to control the same subject matter as the above sections of the statutes, then the above provision may be said to properly authorize the granting of a variance on the basis of a showing of "extraordinary hardship." However, in order to determine whether such a variance is appropriate to vary the terms of such statutes, reference must be made to other provisions of the subdivision control ordinance.
Planned Residential Development. A relatively new zoning concept, the "planned unit development" district, involves a "floating zone" with special requirements and review procedures designed for a unified large-scale development of a tract of land, and is considered as a form or variation of the zoning exception, rather than a subject for a zoning variance 43 A.L.R. 3d 888, *Page 183 
Anno., Zoning: Planned Unit, Cluster, or Greenbelt Zoning. In fact, arguably, such zoning provisions are better conceived as setting forth terms for an alteration of the comprehensive plan of the community which require in each instance basic amendment to the zoning ordinance. See Krasnowiecki, Planned UnitDevelopment: A Challenge to Established Theory and Practice ofLand Use Control. 114 U. Pa. L. Rev. 47 (1965); Dillsburg BoroughCouncil v. Gettys (1973), 7 Pa. Cmwlth. 519, 300 A.2d 805, 808.
The adoption of a planned unit development under the zoning ordinance may present conflicts with subdivision control ordinance provisions. Under such circumstances, it is appropriate to insure that the requirements of the subdivision control ordinance are reconciled with the zoning ordinance. Apparently, this is the purpose of the planned residential development variance. However, the terms of the above ordinance provision lack specificity, and therefore it is not possible to ascertain whether the requirements of the platting statutes could be lowered by virtue of action under the above ordinance provision without first ascertaining whether the planned residential development zoning specifically involved makes provision for such lowered requirements.
Rural Platting. By permitting the plan commission to vary the provisions of the subdivision control law upon a showing that the subdivision is located outside the corporate limits, the city has apparently determined that it may not wish to require strict compliance if the subdivision is so removed from the corporate limits that inclusion of the subdivision within the corporate limits will not soon occur. To the extent the ordinance attempts a general grant of a variance on such a basis, without any guiding standards, the ordinance appears overly broad. In addition, I note that the legislature was aware of this problem and has specifically authorized a procedure by which a municipality may waive its right to approve plats within any part or all of its extraterritorial plat approval jurisdiction. Sec.236.10 (5), Stats. Ordinarily, where the legislature has provided a method to accomplish its legislative purpose, that method should be followed to the exclusion of others.
The above ordinance provision can be viewed as authorizing a variance from the requirements of secs. 236.16 (1) and (2) and *Page 184 236.20 (4) (d), Stats., only under the limited circumstances discussed.
BCL:JCM