KENNETH J. BUKOWSKI, Corporation Counsel Brown County
You have requested my opinion on several practical problems that arise from perceived statutory ambiguity in the interrelation of chapter 236, Stats., governing subdivision creation, and chapter 703, governing condominium creation. Before addressing your specific questions, I think it is necessary to comment on the factors leading to the confusion engendered by Wisconsin's separate statutory provisions for the creation of subdivisions and condominiums.
WISCONSIN LAW GOVERNING SUBDIVISION PLATTING
The purpose of chapter 236, governing the platting and recording of lands in Wisconsin, is:
 [T]o promote public health, safety and general welfare; to further the orderly layout and use of land; to prevent the overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light and air; to facilitate adequate provision for water, sewerage and other public requirements; to provide for proper ingress and egress; and to promote proper monumenting of land subdivided and conveyancing by accurate legal description.
Sec. 236.01, Stats.
Chapter 236 requires strict compliance by subdividers through a detailed statutory scheme aimed at ensuring accomplishment of the above purposes. These purposes are implemented by requiring local governing bodies as well as state agencies to approve a proposed subdivision before it can be recorded. Through this process, the subdivider is assured of complying with local ordinances and development plans.
In addition, the certification by various state agencies guarantees that proposed lot size and elevation will allow adequate septic systems where sewer service is not available; that proposed access *Page 95 
to public roads will comport with safety requirements; and that shoreland developments will maintain water quality. Sec. 236.13
(1)(b), (c), (d) and (2m), Stats. Moreover, as a further condition of approval, the local governing body may require the subdivider to make necessary public improvements, may impose municipal standards on the construction of private streets, alleys or other public ways or may provide easements for the unobstructed flow of solar energy across adjacent lots in the subdivision. Sec. 236.13 (2)(a), (b), (c) and (d), Stats.
Chapter 236 also has detailed surveying, mapping and layout requirements that provide for accurate monumenting of subdivision boundaries and lot lines; minimum lot width and area standards; minimum street width; public access to navigable waters; and inclusion of unplattable land within the subdivision as a part of lots, out lots or publicly dedicated areas. Secs. 236.15 and236.16, Stats.
Thus, Wisconsin's Legislature intended, by enacting this comprehensive system of subdivision and platting regulation to prevent subdivision practices contrary to the public health, safety and general welfare, including disorderly layout, overcrowding, traffic congestion, inadequate light and air, inadequate sewerage disposal facilities and improper monumenting leading to inaccurate legal descriptions of parcels. Sec. 236.01, Stats.
 WISCONSIN LAW GOVERNING CONDOMINIUM CREATION
Chapter 703 is similar to chapter 236, in that it is also a comprehensive statutory scheme complete in itself. 64 Op. Att'y Gen. 175, 178 (1975). However, chapter 703 differs from chapter 236 in the degree to which it regulates the creation and legal description of the condominium. For example, rather than setting out strict surveying requirements for the creation of a condominium plat, section 703.11 requires only a survey that complies with the "minimum standards for property surveys adopted by the examining board [of architects, professional engineers, designers and land surveyors] as defined in s. 443.01
(5) . . . ." Historically, such relaxed standards may have reflected difficulty in accurately surveying and describing apartment units converted to condominiums. Indeed, legal definitions have reflected the notion that a condominium is "an estate in real property typically consisting of ownership . . . of a part of a *Page 96 
residential apartment-type building combined with an undivided interest-in-common of other portions of the property, including the land upon which the building stands." 64 OP. Att'y Gen. at 176. In other words, the traditional concept of condominium envisioned ownership of a unit in a multi-unit building with common ownership of the land on which the building stood.
CREATION OF "LAND CONDOMINIUMS"
As a result of a series of amendments to Wisconsin's original condominium law (Unit Ownership Act, chapter 78, Laws of 1963), it has become possible to create condominiums under chapter 703 that resemble subdivisions of land in all practical respects except for the necessity of complying with the requirements governing land subdivisions of chapter 236.
Creation of a so-called "land condominium" under chapter 703 can be accomplished through declaring an area of land a condominium under section 703.07, delineating sections of land resembling subdivision lots as "limited common elements" under section 703.02 (10) and describing condominium units as "cubicles of air" above the limited common elements under section 703.02
(15). In so doing, a condominium developer can create a "land condominium" resembling a subdivision without satisfying the requirements of chapter 236.
In a 1975 opinion, I addressed the possible creation of land condominiums under chapter 703. 64 OP. Att'y Gen. at 178. I concluded that because what was then section 703.13 established minimal requirements concerning the filing of a "plat of survey of the land" that was subject to local and state government approval, it would be unnecessary to apply chapter 236 to condominium developments. 64 OP. Att'y Gen. at 178. I went on to observe that:
 There is an apparent need to relate the requirements of ch. 236, Stats., at least to those condominium developments which can only be distinguished from land subdivisions on the basis of the manner in which legal title in development property is held. Such developments affect many of the same public interests and may have the same impact on surrounding areas as the more traditional subdivision. However, until such time as the legislature specifically addresses the question of the extent to which such condominium projects should be subjected to the platting and subdivision approval requirements of ch. 236, Stats., it will *Page 97 
be possible for such projects to avoid such statutory requirements unless they actually involve divisions of land which constitute a subdivision under the provisions of sec. 236.02 (8), Stats
Id.
In 1978, chapter 703 was repealed and recreated. Ch. 407, Laws Of 1977. The new chapter omitted the "plat of survey of the land" requirement that had allowed local government and state agency approval of a condominium plat. Moreover, the new law created section 703.37, stating: "For purposes of interpretation of this chapter, a condominium is not a subdivision as defined in ch. 236." Ch. 407, sec. 2, Laws of 1977.
The apparent legislative intent of these changes was to permit the development of land condominiums without requiring compliance with the subdivision provisions of chapter 236. AS a result, the 1978 recreation of chapter 703, "has resulted in the creation of lots and developments which fail to comply with state minimum layout requirements, setback distances for buildings, private waste disposal requirements, and survey and mapping requirements." Testimony of the Department of Development before the Legislative Council Special Committee on Condominium Issues, August 1, 1984, page 2.
RESPONSE TO YOUR QUESTIONS
The legislative history I have outlined above relates to your questions in two ways. First, it explains the current legal status of condominiums that resemble land subdivisions and the fact that chapter 236 provisions may not be applied in such cases. Neither, of course, may chapter 236 be applied to more traditional condominiums. Second, this history may help explain similar problems that arise in the future regarding duties of registers of deeds with respect to condominium recording.
I will answer your questions in the order you asked them.
First, you ask whether section 236.28 governs the description of condominium units. The answer is no. Because chapter 703 is complete in itself and specifically prohibits application of chapter 236 to its interpretation, you must look to chapter 703 for condominium description requirements. Section 703.12 states: "A description in any deed or other instrument affecting title to any unit which makes reference to the letter or number or other appropriate designation *Page 98 
on the condominium plat together with a reference to the condominium instruments shall be a good and sufficient description for all purposes."
The "condominium instruments" to which the legal description must refer are defined in section 703.02 (5): "`Condominium instruments' mean the declaration, plats and plans of a condominium together with any attached exhibits or schedules."
Thus, the proper legal description under section 703.12 must include the appropriate unit designation as well as reference to the condominium instruments. Your assumption that "the condominium plat name and unit number must be mentioned in all conveyances, "and that a unit, section, town, range and metes and bounds description would be inadequate is correct. In fact, describing a condominium unit with a metes and bounds description might prove impossible given the relaxed monumenting requirements of chapter 703.
Next, you ask whether a condominium plat recording supercedes a certified survey map description. The answer is yes. Because chapter 703 is complete in itself, the condominium plat described in section 703.11 is legally sufficient for recording purposes. No reference to chapter 236 is either necessary or proper.
Finally, you ask whether the recording of an amendment to a condominium declaration is required before a proposed building shown on the condominium plat can be constructed. This question was prompted by the near failure of an assessor to assess a completed condominium. Such a problem may arise with "land condominiums" as well as with expansion of more typical condominiums. The answer depends upon the facts. If new construction involves the adding of condominium units not shown in the original declaration under sections 703.09 and 703.11, then section 703.26 applies.
Under section 703.26 (2)(c), a condominium declarant may reserve the right to expand a condominium if he or she outlines on the original condominium plat the "land, buildings, and common elements of new property that may be added to the condominium." Under this section, the "proposed building" you mentioned as shown on the condominium plat served to reserve for the declarant the right to expand the condominium.
However, such a reservation is subject to section 703.26
(3)(a), which states that "property may be added to a condominiumif the *Page 99 
declarant records an amendment to the declaration . . . ." Because "property" as defined by section 703.02 (14) includes improvements on land, it is clear that a declarant must amend the declaration as required by section 703.26 (3)(a) before a proposed building may be constructed .
If, however, new construction involves the construction of the units stated in the original declaration, section 703.26 does not apply and the development can proceed in conformity with the declaration.
I do not believe, however, that the condominium law presents a unique problem to the assessor. The assessor's task, whenever there is development in real estate, is to determine the fair market value of the real estate as of the assessment date. The assessor can draw upon several sources of information that will alert him or her that there may be or is development, such as recordings or filings with the register of deeds, as well as issuance of building permits and water and sewer hookups, where applicable. But the assessor is still required to make an actual assessment based upon, among other things, an inspection of the premises or the best practicably obtainable information. See sec.70.32, Stats.
BCL:WHW:BLB *Page 100