DECISION
Michael West and Michael West Builders, Inc. (collectively, Appellants) appeal from a December 7, 2006 decision of the City of East Providence Zoning Board of Review (Zoning Board), sitting as the City of East Providence Planning Board of Review (Planning *Page 2 
Board). In its decision, the Board upheld the Planning Board's denial of Appellants' application for a minor subdivision designed to accommodate three two-family dwellings. The Planning Board objected to this appeal.[1] Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Appellants are the owners of real estate located between Lynn Avenue and Vineland Avenue in the City of East Providence. Specifically, the parcels identified as Map 405, Block 1, Parcels 5 and 5.2 are owned by Michael West Builders, Inc.; the parcel identified as Map 405, Block 1, Parcel 5.1 is owned by Michael West. It is undisputed that appellants' parcels (the property) fall within a Residential Four (R-4) zone, which pursuant to Section 19-98 of the East Providence Revised Ordinances (the zoning ordinance) permits two-family dwellings on any lot having a minimum square footage of 8750 square feet.[2]
In February 2006, Appellants submitted an application to the Planning Board seeking approval for an administrative subdivision. In the application, Appellants proposed to build three two-family units — duplexes — by shifting the lot lines of the existing three parcels in order to meet the 8750 square foot minimum of Section 19-98. The total area covered by Appellants' parcels is 28,000 square feet. If the subdivision had been approved, two parcels would be comprised of 8750 square feet. The third parcel would amount to 10,500 square feet.
On March 13, 2006, Jeanne M. Boyle, the City Planning Director (Planning Director), notified Appellants that the administrative subdivision application had been reclassified to an *Page 3 
application for minor subdivision.[3] In the Planning Director's letter to Appellant, she stated that, "[c]onsidering the density proposed and possible impacts on adjacent residential property owners . . . the application has been reclassified. . . ." Shortly thereafter, Appellants formally applied for minor subdivision of the property. Between the time Appellant submitted the revised application and May 8, 2006 — the date of the Planning Board meeting to address the project's preliminary review — numerous individuals supported Appellant's proposal.
An April 20, 2006 letter from Zoning Officer Edward Pimentel to both Stephen Coutu, Public Works Director, and the Planning Director, stated that he found Appellant's proposed three-lot minor subdivision in full compliance with all zoning ordinance requirements. Additionally, a May 3, 2006 Planning Department recommendation gave conditional approval for Appellant's proposal. Specifically, this recommendation stated, in no less than four separate locations within the text, that Appellant's subdivision was consistent with the City's Comprehensive Plan and zoning ordinance. In fact, at Appellant's May 8, 2006 appearance before the Planning Board at a public hearing for review of its Preliminary Plan, the Planning Director stated as follows:
 "If I could just make a general comment too on the density. [A] lot of people probably did not realize that this particular zone district allowed two-family construction on this size lots. The fact of the matter is that it does, that this area is zoned R-4 which permits a two-family home on an 8,750 square foot lot. And one of the lots is being proposed as [sic] actually in excess of that. So as far as zoning compliance this subdivision meets the subdivision requirements. You may be dismayed that the zoning requirements are — allow this much development, but *Page 4 
the fact of the matter is that they do. The other general I guess sort of guidance document that we have, it's actually more than a guidance document, it's a comprehensive plan. That also talks about the density associated with this particular district. And the fact of the matter is that what's being proposed is consistent with the density guidelines associated with the comprehensive plan." Transcript (Tr. I), May 8, 2006 Planning Board Public Hearing for Preliminary Plan Review, at 56.
Two other Planning Board members made similar comments, and their words were aimed at quelling the concerns raised by numerous residents regarding the expected impact on the neighborhood if the subdivision were to be approved. (Tr. I. at 64-68.)
Abutters were particularly concerned that the three new duplexes would increase traffic, cause on-street parking congestion, and hinder snow removal. Additionally, they asserted that their property values would diminish with an increased number of rental properties in the neighborhood. Further, they claimed that an influx of renters would cause escalating crime and vandalism near their homes. After hearing these concerns, the Planning Board voted to continue their assessment of Appellants' Preliminary Plan so that it may again confer with the Planning Department and "[g]ive everybody an opportunity to continue to look at this and related issues." After this time, the Planning Board first acknowledged that the Comprehensive Plan permitted densities in the location of Appellant's property of up to 5.8 units per acre; however, the use table contained in the text of the zoning ordinance was silent regarding a specific "unit per acre" density designation. Appellant's property, at 28,000 square feet, did not comprise a full acre. Consequently, it began to re-examine the conformity of the proposed subdivision with the City's Comprehensive Plan.
In an effort to rectify any discrepancies between the Comprehensive Plan and zoning ordinance, Diane Feather, the Chief Planner, described the timeline relating to the City's enactment of its Comprehensive Plan and subsequent amendments to the zoning ordinance. In a *Page 5 
May 25, 2006 memo, she noted that the East Providence City Council approved a Comprehensive Plan amendment in the fall of 2001[4] that changed the density in the "low density residential" category from 8 units per acre to 5.8 units per acre. The Chief Planner noted that on November 6, and again on December 18 of the same year, the City Council approved amendments to the text of the zoning ordinance designed to reflect the recent amendments to the Comprehensive Plan.[5] Pertinent to the Court's discussion is the amendment to Section 19-98 of the zoning text entitled "Use." As mentioned above, this particular amendment provided that two-family dwellings would be permitted in an R-4 zone if the lot size met an 8750 square foot minimum. It did not, however, address a specific unit-per-acre calculation. The Planning Director confirmed this at Appellants' second public hearing when she stated, "[t]here is no density regulation, per se. There are dimensional regulations that are contained within the zoning." Transcript (Tr.II), July 6, 2006 Planning Board Public Hearing for Preliminary Plan Review, at 95.
With this information, as well as a July 2006 expert report submitted on behalf of Appellant, an opinion by the town solicitor, and the record arising prior to the preliminary hearing, the Planning Department issued a second recommendation. This time, the Planning Department completely reversed its initial opinion. It found that Appellants' proposal violated five goals and objectives of the Comprehensive Plan, largely relating to growth management in existing residential neighborhoods, which would preserve the quality and character of the housing stock therein. It concluded that the proposed subdivision was inconsistent with the *Page 6 
Housing Element, Land Use Element, and Land Use 2010 Plan of the City's Comprehensive Plan, and thereby recommended its denial.
On July 20, 2006, the Planning Board held a second hearing regarding Appellant's proposed subdivision. Citing concerns such as lingering garbage, the erection of basketball hoops bordering the street, sheets serving as window coverings instead of shades, and renters' dogs roaming freely through the neighborhood, residents again voiced their concerns about the proposed subdivision. Objections relating to decreasing property values, improper drainage, and the general disruption that would be caused by prolonged construction also persisted. The Planning Board entertained testimony from Patrick Hannah, a member of the Planning Staff; Appellant's attorney, John Mancini; Appellant's expert, Joseph Lombardo; the Planning Director; and the town solicitor. The discussion primarily concerned the alleged inconsistency in the contents of the Comprehensive Plan and the zoning ordinance. The Planning Director made it clear that "[i]t's the density of the development that's being proposed, not the land use, itself[,]" that is problematic. (Tr. II at 95.) She further stated that "[the Planning Department] probably did not focus enough on that whole density issue when we did our first review." Id. Notwithstanding the subdivision's density issues, Mr. Lombardo testified that the development would fit squarely within the surrounding neighborhood, an area having comparable duplex development. Despite Mr. Lombardo's remarks, the Planning Board unanimously voted to adopt the Planning Department's second recommendation to deny Appellant's minor subdivision because of its failure to meet the density requirements set forth in the Comprehensive Plan.
A few months later, at a November 9, 2006 meeting, the Zoning Board considered the Planning Board's denial of Appellants' application on appeal. In a written decision dated December 7, 2006, the Zoning Board found that the Planning Board did not err in its *Page 7 
interpretation of the City's Comprehensive Plan and Subdivision Regulations, and that the record fully supported the Planning Board's denial of Appellants' minor subdivision based on the proposal's excessive density and inconsistency with the Comprehensive Plan. Appellants now appear before this Court seeking review of the Zoning Board's decision.
 II Standard of Review
This Court's review of the decision of a zoning board, sitting as a board of appeals for a planning board, is governed by § 45-23-71, which provides as follows:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 45-23-71(c).
Therefore, the Court's review of the Board's decision is not denovo. Instead, § 45-23-71 requires it to review the Zoning Board's decisions using the "`traditional judicial' review standard that is applied in administrative-agency actions." Monroe v. Town of EastGreenwich, 733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. PlanningBoard of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). Consequently, the Court can neither weigh witness credibility or the evidence, nor make findings of fact. Id. The Court's review is therefore limited to examining the record to ascertain whether the Board's decision "rests upon competent evidence or is *Page 8 
affected by an error of law." Monroe, 733 A.2d at 705 (citingKirby, 634 A.2d at 290). Consequently, the record must contain "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Rev. of NorthKingstown, 818 A.2d 685, 690 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand and Gravel Co., 424 A.2d 646, 647 (R.I. 1981)).
Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict of Interest Com'n,509 A.2d 453, 458 (R.I. 1986). Furthermore, it is well-settled that this Court may sustain a correct judgment "even if it was reached through faulty reasoning or mistake of law." Mesolella v. City of Providence,439 A.2d 1370, 1373 (1982) (citing Berberian v. Rhode Island Bar Assoc.,424 A.2d 1072 (R.I. 1982)).
 III Analysis
Appellants argue that the subdivision proposal complies with the City's zoning ordinance and subdivision regulations. Further, they argue that the City's zoning ordinance and Comprehensive Plan are neither ambiguous nor uncertain and, therefore, the City's reliance on this factor to assert that the zoning ordinance controls in the event of an inconsistency is not warranted. Alternatively, Appellants insist that, even if there is a conflict between the City's ordinance and its Comprehensive Plan, a notation on the Land Use Plan 2010 Map, which is a part of the Comprehensive Plan, resolves all conflicts in favor of the existing zoning ordinance. Appellants also aver that even if the Comprehensive Plan is found to control the Boards' decisions, the Zoning Board cannot enforce the restriction because the City failed to implement it *Page 9 
within 18 months. Further, Appellants argue that the Zoning Board erred in failing to apply equitable estoppel principles to the circumstances of this case.
The Zoning Board maintains that Appellant's project complies only with the minimal dimensional requirements of zoning. The Zoning Board contends that there is indeed a discrepancy between the City's Zoning Ordinance and its Comprehensive Plan, but argues that, where such conflict arises, the Comprehensive Plan controls. As a result, it claims that, in order to fully comply with the City's zoning laws, Appellants must adhere not only to the ordinance itself, but also to the additional density requirements set forth in the Comprehensive Plan.
 A Relationship and Consistency between a Comprehensive Plan and a Municipality's Zoning Ordinance
East Providence, along with other municipalities within the state, must design and adopt a Comprehensive Plan in accordance with the Rhode Island Comprehensive Planning and Land Use Regulation Act. G.L. 1956 §§ 45-22.2-1 to 45-22.2-14; see also § 45-22.2-2(b) ("[a]ll cities and towns which have not adopted a comprehensive plan shall do so"). The Act describes the comprehensive plan as "a statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality." Section § 45-22.2-6. The plan is developed by the municipality's planning authority, must be adopted by the municipality's legislative body, and thereafter approved by the state. See § 45-22.2-8(c); see also § 45-22.2-9. It must contain certain "elements," including a "goals and policies statement," a "land use plan element," and a "housing element." Id. Additionally, each town or city must "[c]onform its zoning ordinance and map with its comprehensive plan" within 18 months of the plan's approval by the state. Section 45-22.2-5(a)(3). *Page 10 
"It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance."Jones v. Rommell, 521 A.2d 543, 544-45 (R.I. 1987); see also Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (applying the precepts of statutory interpretation to the construction of an ordinance). Therefore, when interpreting an ordinance, the Court utilizes Rhode Island's longstanding rules of statutory construction, which indicate that "when the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." Park v. Rizzo Ford, 893 A.2d 216, 221 (R.I. 2006) (quoting Gem Plumbing Heating Co. v. Rossi, 867 A.2d 796, 811
(R.I. 2005)). Further, this Court recognizes that "a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance."Monforte v. Zoning Bd. of Review of the City of E. Providence,93 R.I. 447, 449, 176 A.2d 726, 728-29 (1962). It, therefore, will give deference to the Boards' interpretation of its governing ordinance and regulations. See id.
Section 19-98 of zoning ordinance delineates the use regulations for districts contained in the City's zoning map. As such, Section 19-98 lists the permitted and prohibited uses within a particular district, as well as uses for which a special permit may be applied and granted. Importantly, the City uses a dimensional, or lot-size, requirement within its ordinance to impose a density limitation, a common way to cap development in a given district. See 3 Arlen H. Rathkopf, The Law ofZoning Planning, § 51:7 (2006). Section 19-98's use table permits a "[t]wo-family dwelling if located on a lot having an area of at least 75 percent greater than required for a one family dwelling[,]" or a lot having at least 8750 square feet. Consequently, this aspect of the zoning ordinance is not ambiguous with respect to the dimensional prerequisites to building a two-family home. *Page 11 
The City's Comprehensive Land Use Plan 2010 Map, however, places Appellant's property in the same R-4 district, but indicates that it is subject to a 5.8 unit-per-acre density restriction. This density restriction first was adopted by the City Council in the fall of 2001. Appellants argue that this restriction is problematic because this 5.8 unit-per-acre density restriction is not reflected in the zoning ordinance, and § 45-24-43(a) requires that an ordinance be consistent with the Comprehensive Plan. Therefore, Appellants argue that if an inconsistency existed among both documents, the applicable provision in the zoning ordinance should control any development decisions relating to their property.
"Consistent" is defined as "[i]n agreement; compatible." The American Heritage Dictionary 392 (4th ed. 2000). Alternatively, where something is "inconsistent" with another thing, it is "contradictory" to it.Id. at 888. It has been said that a Comprehensive Plan is consistent with an ordinance if both "share common elements, meaning that any elements addressed by both . . . are in agreement." Lake City Corp. v.City of Mequon, 558 N.W.2d 100, 104 (Wis. 1997).
Neither party disputes that the property is located in an R-4 district. The Comprehensive Plan, as well as the zoning map — which is a part of the ordinance — reflects this categorization. Consequently, information pertaining to the property's district — the R-4 zone — is in agreement to the extent that certain dimensional requirements are identical in both. Therefore, the City's Comprehensive Plan and ordinance are consistent inasmuch as they share common elements relevant to restrictions on Appellants' property. See Lake City Corp.,558 N.W.2d at 104.
As discussed, Appellants' concern stems from the Comprehensive Plan's additional 5.8 unit-per-acre density limitation. However, it does not necessarily follow that a municipality's Comprehensive Plan is inconsistent with its ordinance if the plan contains elements that the *Page 12 
ordinance does not. Id. An ordinance must address the dimensions and size of proposed lots as well as the density and intensity of use. Section § 45-24-33. The City's zoning ordinance accomplishes this through its dimensional requirements. The Comprehensive Plan, however, recognizes the dimensional regulations of the R-4 district, but more directly addresses density concerns for that district using a specified unit-per-acre designation. See § 45-22.2-6 (requiring land use element of plan "relate the proposed standards of population density and building intensity to the capacity of the land"); see also E.C. Yokley,Zoning Law Practice § 5-2(a), at 5-10 (stating "modern comprehensive plans . . . are usually a great deal more than `a division of property into districts'"). Because the Comprehensive Plan's density restriction is additional to — not inconsistent with — the dimensional requirements of zoning, the Court finds irrelevant Appellants' assertion that the zoning ordinance would control the boards' decision in the event of an inconsistency.
Even assuming arguendo that the Court was to discern an inconsistency in the method through which the density regulation is achieved[6] or an inconsistency in the square footage required to ensure that the permitted density is not violated, [7] finding a Comprehensive Plan that contains elements a zoning ordinance does not is not as problematic as Appellants urge. Although our Supreme Court has not ruled on the specific issue presented in this case — whether a provision in a municipality's Comprehensive Plan should be given effect despite its conflict with a zoning ordinance provision — it has held that a City's Comprehensive Plan should not be *Page 13 
treated as an "innocuous general-policy statement," but a "binding framework or blueprint that indicates town and city promulgating of conforming zoning and planning ordinances." Town of E. Greenwich v.Narragansett Electric Co., 651 A.2d 725, 727 (R.I. 1994). Consequently, a municipality is "legally compelled to enact or to amend its zoning ordinance in conformity" with its Comprehensive Plan. Id. at 727 (interpreting § 45-24-29(b)(2)). It follows that the Comprehensive Plan must first espouse the planning goals of the municipality before an ordinance is able to reflect the overarching development concerns of the community. See P.J.C. Realty, Inc. v. Barry, 811 A.2d 1202, 1204 (R.I. 2002) (declaring municipality must conform zoning ordinance to comprehensive plan). Therefore, where the provisions of a Comprehensive Plan and Zoning Ordinance are in conflict, the former must become the operative document. To find otherwise would, in essence, place the horse before the cart when considering the policy implications of requiring the existence of a Comprehensive Plan. See § 45-24-34 ("[a] zoning ordinance . . . shall include a statement that the zoning ordinance is consistent with the comprehensive plan").
Further support for enforcing a provision found in the Comprehensive Plan despite its inconsistency with the zoning ordinance is drawn from the boards' obligation to assess Appellants proposal in light of the City's existing subdivision regulations.[8] The Court finds Appellant's argument — namely, that if the use proposed is a use permitted by right under the zoning laws, the Zoning Board has no alternative but to approve it — unsettling. Appellants' contention "fails to take into consideration that a subdivider must meet the zoning regulations and then additionally must comply with . . . subdivision regulations." Shoptaugh v. Bd. of County Comm'rs, 543 P.2d 524, 527
(Colo.App. 1975); see also 1 E. C. Yokely, Zoning Law *Page 14 Practice, § 1-2 (4th ed. 1979) (recognizing zoning concerns use and planning is broader in its concept). "Subdivision controls are imposed for the purpose of implementing a comprehensive plan for community development. To achieve this end, plats submitted to a planning commission for approval must be examined in relation to the official map and the master plan." 4 Anderson's American Law of Zoning, § 25.20 (4th ed. Young 1996). Moreover, "`[i]f planning boards had no alternative but to rubber-stamp their approval on every subdivision plat which conformed to the zoning ordinance, there would be little or no reason for their existence.'" Coffey v. Maryland-Nat'l Capital Park PlanningComm'n, 441 A.2d 1041, 1044 (Md. 1982) (citations omitted); seealso Subdivision Regulations § 12-1 (requiring subdivision projects reflect goals, objectives, procedures, maps, and policies of comprehensive plan).
In Rhode Island, the Legislature requires that all subdivision proposals conform to a municipality's Comprehensive Plan. See
§ 45-23-60. If the Legislature intended that issues addressed in a municipality's official zoning map and ordinance could form the sole basis for denial of a subdivision, then it would not have developed this requirement. To mirror the General Assembly's sentiment, the City Council provided the City's own subdivision regulations that the Planning Board must find that all "proposals shall be consistent with the . . . Comprehensive Plan, including its goals, objectives, policy statements, and Land Use 2010 Plan and/or shall satisfactorily address the issues where there may be inconsistencies." Subdivision Regulations § 5-4; see also id. at § 1-5. The City's ordinance also provides that if the City's subdivision regulations "impose other higher standards than are required [by the ordinance itself], the provision of such . . . regulation shall govern." East Providence Revised Ordinances § 19-8. *Page 15 
It is apparent that Appellants' subdivision proposal must abide by the City's subdivision regulations, which import the requirements of the Comprehensive Plan into the City's subdivision decisions. It is equally obvious, when comparing the subdivision regulations with the ordinance provision pertinent to this case, that the subdivision regulations set forth more restrictive measures to control population density.Compare East Providence Revised Ordinances § 19-98 (demanding 8750 square foot minimum lot size for duplex development) with id. at § 19-8 (requiring more stringent development standards apply to proposal)and Subdivision Regulations § 5-4 (insisting developments adhere to Comprehensive Plan necessary). Appellants' proposal, therefore, can only satisfy the subdivision regulations and the ordinance if it respects the higher, or more restrictive, density standards set forth in the Comprehensive Plan. See Bd. of County Comm'rs v. Gaster, 401 A.2d 666,674 (Md. 1979) (upholding denial of subdivision conforming to zoning requirements but violating density provisions in master plan); see alsoBaker v. City of Milwaukie, 533 P.2d 772, 779 (Or. 1975) (concluding comprehensive plan is controlling document in municipality and zoning permitting more intensive use must fail).
In this case, neither party disputes that the proposal does not meet the density which is required by the Comprehensive Plan. See Lake CityCorp., 558 N.W.2d at 108 (upholding denial of plat approval where city plan commission relied on element contained exclusively in master plan). As a result, it cannot satisfy the City's subdivision regulations or ordinance. The Zoning Board, therefore, did not err in affirming the Planning Board's denial of Appellants' subdivision proposal. See In reLallo, 768 A.2d at 926 (giving deference to agency interpreting statutes and regulations entrusted to it); see also Restivo v. Lynch,707 A.2d 663, 668 (R.I. 1998) *Page 16 
(commenting planning board has ability to reject proposal that conforms to zoning regulations but is "otherwise problematic").
Appellants additionally counter that the terms of the Comprehensive Plan — in particular, a notation on the Land Use 2010 Map and provisions on Page C.1-66 of the text of the plan — are applicable to this case. Appellants contend that when uncertainty exists in applying conflicting provisions of the Comprehensive Plan and zoning ordinance to land use decisions, provisions contained in the latter shall prevail. Specifically, Appellants point to the statement on the Land Use Plan 2010 Map in support of their contention as follows:
 "Notwithstanding this map, the City's intent is to keep the zoning as currently delineated on the zoning map for the City of East Providence and it shall remain so until request for change in zoning by the property owner occurs. See pages 38, 39 and 66." Change in Comprehensive Plan, Land Use Plan 2010 Designation, July 2004 (emphasis added).
Appellants also call the Court's attention to a page of the text of the plan, entitled "Inconsistencies Between the Land Use Plan Element, Other Plan Elements, the State Guide Plan and City Zoning Regulations" which provides as follows:
 "The one area of potential conflict exists as the Plan relates to current City Zoning. The Rhode Island Comprehensive Planning and Land Use Act requires that City Zoning be consistent with the Comprehensive Plan. [It] further requires that the City set forth its implementation program to conform its zoning ordinance and map to the Comprehensive Plan. It is the intent of the City that the Comprehensive Plan shall include the current zoning map for the City and that there shall be no requirement for immediate changes to that zoning map. The implementation program and procedures of the Plan shall be that rezoning shall only occur upon the request of any individual property owner; at such time the text of the Plan will control any such changes. Each rezoning must be accomplished in accordance with both the Land Use patterns and allocations set forth in the Plan and the timing of actions or strategies that achieve these land use patterns and allocations.
 It is not the City's intent or desire to initiate rezoning to force immediate compliance. Only when rezonings are requested by property owners will rezoning be considered. At such time the rezoning must comply with the Plan; *Page 17 
until such request occurs, the current zoning will prevail." East Providence Comprehensive Plan at C.1-66 (emphasis added).
Appellants contend that these excerpts prevent the Comprehensive Plan from controlling the Planning Board's decisions regarding the subdivision of land; however, the Court acknowledges that "[z]oning, by definition, involves a division of the community into `zones' or districts." 2 Anderson's American Law of Zoning, § 9.02 (4th ed. Young 1996). These districts commonly restrict the use to which land in specified areas may be put. Id. The City delineates use districts on its official zoning map, which is a part of its ordinance. East Providence Revised Ordinances § 19-95. Based on the City's notation on the Land Use 2010 Map, the Court finds that the Comprehensive Plan is designed to the reflect the current zoning map for the City. As such, it need not be changed unless a rezoning is required.
As discussed, Appellants' property is located in an R-4 zone, which permits property "use" that includes one-family and two-family dwellings. The land use permitted for Appellant's Property in the Comprehensive Plan remains R-4 — albeit having a "low density residential" designation. The type of "use" permitted in Appellant's district has not changed; therefore, there is no discrepancy between the Land Use 2010 Plan or Map and Zoning Ordinance which would require a rezoning. Therefore, the Court finds that the aforementioned language is inapplicable to the instant matter. The language highlighted above refers to instances in which the use or district delineated on the official zoning map no longer corresponds with the City's newly adopted Comprehensive Plan.[9] See § 45-22.2-6(B) (stating "land use plan must contain an analysis of the inconsistency of existingdistricts, if any, with the land use plan) (emphasis *Page 18 
added). This Court is satisfied that the Planning Board's interpretation was neither clearly erroneous nor unauthorized. See Gallison v. BristolSch. Comm., 493 A.2d at 166. The Planning Board had, at its disposal, an interpretation of such language by its town solicitor. As such, this Court respects to the Planning Board's interpretation of the notation on the map of its Comprehensive Plan. See Martin v. Occupational Safety Health Review Comm'n, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed. 117
(1991) (commenting "an agency's construction of its own regulations is entitled to substantial deference"); see also Monforte, 93 R.I. at 449,176 A.2d at 728-29.
Even assuming arguendo, that Page C.1-66 was found applicable to the instant matter, the Comprehensive Plan would control any rezonings required. As a result, a rezoning to allow a proposal that called for intensity of use greater than the Comprehensive Plan would fail, because the plain language of Page C.1-66 would prohibit it. See § 45-24-50
(requiring zoning ordinance provisions, which include the zoning map, be amended only in accord with a Comprehensive Plan). Accordingly, the Court finds that the Planning and Zoning Boards did not commit an error of law in construing its ordinance and Comprehensive Plan.
 B Time Frame within Which Zoning Ordinance Shall Be Broughtinto Conformance with Comprehensive Plan
Similarly, Appellants' argument that the project must be approved because the City had not altered its ordinance to conform with its Comprehensive Plan within 18 months of the plan's approval must also fail.[10] Appellants point specifically to §§ 45-24-34 and 45-24-50 of the General Laws as requiring this result. *Page 19 
Section 45-24-34(a) provides that a zoning ordinance shall include a statement that it is consistent with a municipality's Comprehensive Plan. Subsection (b) provides that the municipality "shall bring the zoning ordinance . . . into conformance with its comprehensive plan [after its approval] not more than eighteen (18) months after approval is given." Section 45-24-43(b); see also § 45-24-50(d) (stating "[t]he city or town must bring the zoning ordinance . . . into conformance with its comprehensive plan as approved . . . not more than eighteen (18) months after approval is given"); see also § 45-22.2-5(a)(3) (stating municipality shall "conform its zoning ordinance and map with its comprehensive plan within eighteen (18) months of plan adoption and approval"). Although the Rhode Island Supreme Court has commented that "[a] town is legally compelled to enact or to amend its zoning ordinance in conformity with the amendments [to the comprehensive plan],"Town of E. Greenwich, 651 A.2d at 728, it has not commented on the consequences of a municipality's failure to do so within the prescribed period. Typically, when a statute sets forth a grant of power, which is then followed by limiting language, it should be construed as mandatory.See Cabana v. Littler, 612 A.2d 678, 683 (R.I. 1992) (commenting power to tax is "not absolute," therefore requiring protection of statutory scheme's unequivocal limiting language to protect taxpayers). However, "[i]n those fields of administrative action where an exercise of discretion is normally intended . . . provisions granting power may be held to be directory." Norman J. Singer, 2B Sutherland StatutoryConstruction § 57:17; see also P.J.C. Realty, Inc., 811 A.2d at 1207
(stating "municipal council has discretion in enacting an ordinance whether relating to zoning or to other subject matter"). Additionally, "[n]egative words do not always compel an imperative construction nor does their absence compel directory construction." Sutherland StatutoryConstruction § 57:9. *Page 20 
It may be difficult to imagine a statutory provision more absolute than one that includes a time limitation; nevertheless, such provisions are often construed as directory instead of mandatory. SutherlandStatutory Construction § 57:19 (acknowledging time within which boards or commissions must meet and take official action, or within which ordinance must be published to become effective construed as directory). A directory interpretation is supported when sanctions for a failure to meet a particular requirement are absent from the statutory scheme,Gryguc v. Bendick, 510 A.2d 937 (R.I. 1986), or the provision at issue is incidental to — not the essence of — the scheme. Washington HighwayDev. V. Bendick, 576 A.2d 115 (R.I. 1990). Additionally, where a statute is couched in mandatory terms, it nonetheless may be directory in the sense that failure to comply with the time provision therein will not void the action taken. Beauchesne v. David London Co., 118 R.I. 651,375 A.2d 920 (1977) (citing Providence Teachers Union v. McGovern,113 R.I. 169, 319 A.2d 358 (1974)). Furthermore, in determining whether a statute is directory or mandatory, the Court must ascertain the legislative intent underlying its enactment. Town of Tiverton v.Fraternal Order of Police, Lodge #23, 118 R.I. 160, 165, 372 A.2d 1273,1276 (1977). If a particular construction "operates to defeat an otherwise legitimate legislative intendment while another serves to support it, [the Court] will adopt the latter construction."Id. (quoting State v. Sprague, 113 R.I. 351, 355, 322 A.3d 36, 38 (1974)).
This Court finds that the 18-month time period by which a municipality must conform its ordinances to its Comprehensive Plan is directory rather than mandatory. Although action of adopting a Comprehensive Plan is mandatory, for all municipalities must design and implement such a plan, the act of conforming the existing ordinances to it within exactly 18 months is not. *Page 21 
The time frame itself must be construed as directory. See New EnglandDev't, LLC v. Berg, 913 A.2d 363, 372 (R.I. 2007).
In examining this time restriction, the Court first recognizes that the legislature did not provide a sanction for the failure to meet the 18-month time limitation governing the adoption of a Comprehensive Plan.See id. Moreover, a fair reading of § 45-24-27 et seq. relating to zoning ordinances supports the following conclusion: a unified system of land use regulation is the essence of the statute and the time frames contained in § 45-24-34 and 45-24-50 are subsidiary to this overarching concern. In addition, permitting a landowner to develop his or her property in a manner inconsistent with the Comprehensive Plan would be contrary to legislative intent. See § 45-24-34(a) (providing that, "in the instance of uncertainty in the construction of the ordinance, the ordinance shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan").
Most importantly, a municipality's failure to amend its ordinance to reflect all aspects of its Comprehensive Plan should not void the provisions found therein. Compliance with the Comprehensive Plan is designed to begin as soon as the City Council adopts the plan, not merely when it is formally approved by the director of administration, the state comprehensive plan appeal board, or the Supreme Court.See § 45-22.2-8(c) (stating "comprehensive plan is adopted, for the purpose of conforming municipal land use decisions . . . when it has been enacted by the legislative body of the municipality"). The importance of the City's adherence to its Comprehensive Plan is amplified by § 15-86(a) of its ordinance, which provides as follows:
 "[a]t such time that a master plan . . . is . . . officially adopted by the city council, the planning board . . . shall consider such plan and require that the proposed subdivision follow such plan in regard to land use, intensity of development, . . . and other features of the master plan." *Page 22 
This allows the City to utilize its Comprehensive Plan when it is adopted by the municipality, even in the interim before it is formally approved by the state.[11] During this time, the provisions of the plan would be enforced despite the fact that a landowner would not have any notice of new regulations contained therein. See East Providence Revised Ordinances § 15-88 (acknowledging Planning Board "shall have grounds for denial of the project" if proposal does not meet the "goals, objectives, policy statements, [or] land Use 2010 Plan"). Subdivision Regulations § 5-4. Therefore, the 18-month requirement cannot serve to void a plan provision merely because the landowner did not have notice of its existence.
Moreover, if a municipality permitted a landowner to develop his or her property in a manner inconsistent with the Comprehensive Plan, such actions would fly in the face of a statutory scheme that stresses the importance of each municipality's development of and adherence to the plan. See § 45-23-32 (requiring "local [subdivision] regulations shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan"). The underlying purpose of the State's legislation involving Comprehensive Plans certainly would be hindered if the Court completely discounted a provision in a municipality's plan merely because it was not incorporated into an ordinance within the prescribed statutory time frame.[12] *Page 23 
Additionally, Section 45-23-60 sets forth the findings that a Planning Board must make prior to approving a subdivision. Not only does the statute require a finding that the project is "consistent with the comprehensive plan and/or has satisfactorily addressed the issues where there may be inconsistencies," but also a finding that any development "is in compliance with the standards and provisions of the municipality's zoning ordinance." These separate, required findings indicate that both documents — the ordinance and the plan — may be viewed independently. See §§ 45-23-60(a); 45-23-60(b); see also Lake CityCorp. v. City of Mequon, 558 N.W.2d 100, 108 (Wisc. 1997) (finding master plan may properly contain elements additional to official map and planning commission may rely on that sole element to reject plan approval). As such, the significance attached to each must be respected in local land development processes. Therefore, any failure of the City to amend its zoning ordinance to incorporate, in detail, the provisions of its Comprehensive Plan should not render that plan irrelevant as Appellants ultimately suggest. See Goodman v. Reg'l Transp. Auth., 360 N.E.2d 51, 54 (Ill. 1976) (illustrating court's refusal to invalidate budget ordinance adopted in untimely manner because legislature responsible for determining consequences of failure to comply with statutory mandate). As a result, the Zoning Board, in affirming the Planning Board's decision, correctly determined that any failure to incorporate the exact provisions of the Comprehensive Plan into the zoning ordinance within the 18-month statutorily prescribed time frame would not affect the validity of utilizing the Comprehensive Plan in formulating subdivision decisions. *Page 24 
 C Equitable Estoppel
The Appellants have urged a determination, based upon the facts set forth above, that the Zoning Board committed an error of law when it failed to apply principles of equitable estoppel to facilitate the approval of its subdivision application. The doctrine of equitable estoppel may be applied against a municipality "under circumstances where justice would so require." Greenwich Bay Yacht Basin Assocs. v.Brown, 537 A.2d 988, 991 (R.I. 1988). While it has been applied by our Supreme Court in the zoning context, equitable relief is "extraordinary" and will not arise absent "the rare instance where the equities are clearly balanced in favor of the party seeking relief." Id.
Additionally, the landowner must make "substantial investment or expenditure" in reliance on a decision by zoning officials, such as the issuance of a building permit. Shalvey v. Zoning Bd. of Rev. ofWarwick, 99 R.I. 692, 699, 210 A.2d 589, 593 (1965) (requiring some reasonably substantial obligation prior to acquiring protected rights in ordinance).
"The elements of equitable estoppel are: 1) good faith reliance; 2) on an act or omission of a municipality; 3) which induces a party to incur substantial obligations; 4) making it highly inequitable to enforce the zoning ordinance." 4 Rathkopf, The Law of Zoning Planning, § 45.104 at 44-45 (1991). Other state courts agree that the property owner's reliance must be reasonable and justifiable in light of the government's conduct. See, e.g., LeDoux v. Kodiak Island Borough, 827 P.2d 1121, 1124
(Alaska 1992); Town of West Hartford v. Gelinas, 559 A.2d 1176, 1178
(Conn.App.Ct. 1989); City of Concord v. Tompkins, 471 A.2d 1152, 1154
(N.H. 1984). Therefore, a landowner may not seek refuge behind a theory of equitable estoppel if he or she had actual or constructive knowledge of a municipality's zoning restrictions and failed to abide by them.Ex parte City of Jacksonville, 693 So. 2d 465, 467-68 (Ala. 1996);Hall *Page 25 v. Bd. of Envt'l Protection, 498 A.2d 260, 267 (Me. 1985). Additionally, "[b]efore [the doctrine] should be applied, it should appear that there was some positive action on the part of the agents which had induced the action of the adverse party. Mere nonaction is insufficient to justify an application of the doctrine." Ferrelli v. Dep't of EmploymentSecurity, 106 R.I. 588, 592, 261 A.2d 906, 909 (1970).
The Court finds that the factual circumstances of this case are inapplicable to the doctrine of equitable estoppel. At the outset of Appellants' application, the Planning Director notified Appellants that based on density concerns, the application had been reclassified to a minor subdivision. A letter from Jeanne M. Boyle to Michael West, dated March 13, 2006, stated that "[c]onsidering the density proposed and possible impacts to adjacent residential property owners . . ., the application has been reclassified." Although this concern was not thoroughly addressed until later in the approval process, Appellants were placed on immediate notice that the density of their project had been questioned.
Minor subdivision plan review consists of two stages — preliminary and final. See Subdivision Regulations § 8-3; see also Sugarman v.Lewis, 488 A.2d 709 (R.I. 1985) (reviewing well-settled case law granting authority over subdivision to planning boards). In preparing for the Planning Board's review of its application, Appellants contend that they relied on the City's existing zoning ordinance and subdivision regulations. As discussed supra, the ordinance and subdivision regulations require that all plans not only meet the requirements of zoning, but also be considered in light of the existing Comprehensive Plan. See East Providence Revised Ordinances § 15-88(a); Subdivision Regulations § 5-4(a) (requiring proposal be consistent with plan, including Land Use Plan 2010 Map). Therefore, Appellants had been *Page 26 
placed on constructive notice that their proposal was subject to compliance with the Comprehensive Plan.
Additionally, although parties involved in reviewing Appellants' application — including the planning staff — initially stated that the project complied with the Comprehensive Plan, Appellants still faced a public hearing regarding the proposal. The fact that neighbors — rather than planning staff members themselves — initiated inquiries regarding the project's density is irrelevant to the Planning Board's final decision regarding the proposal. The Planning Board, in the interest of further examining Appellants' plans in light of neighbors' concerns, as well as its desire to ensure that it had an opportunity to look at related issues, moved to continue the public hearing at the preliminary approval stage. Transcript, May 8, 2006, at 76. The Planning Board's acts at that time would not have caused reasonable reliance on the part of Appellants. In fact, any activities taken in preparation for the preliminary review are not intended to suggest imminent approval.See Ferrelli, 106 R.I. at 593, 261 A.2d at 909 (recognizing doctrine might apply only where it would be "unjust to permit the public body to, in effect, retract what it previously had done"); Subdivision Regulations § 5-6(c) (stating "[n]o approval is implied or obtained through a project concept review conference; see also
Subdivision Regulations § 5-7(e) (stating "[p]re-application discussions are intended for the guidance of the applicant and shall not be considered approval of a project or its elements); Subdivision Regulations § 8-6 (noting even preliminary plan approval "does not constitute approval of a subdivision").
Finally, Appellants have not incurred substantial obligations that would make enforcement of the Comprehensive Plan's density restrictions inequitable. Appellants have only begun the construction of one duplex; because of this controversy, plans for the other two structures have been suspended. See Ferrelli, 106 R.I. at 594, 261 A.2d at 909 (noting *Page 27 
prerequisite to invoking doctrine is that party either acted or refrained from acting to his detriment). No building permit upon which Appellants may have relied has ever been issued. See Shalvey,99 R.I. at 699, 210 A.2d at 594 (suggesting actual issuance of permit relevant to landowner's good faith reliance). Therefore, the facts of this case differ substantially from those cases cited by Appellants in which the doctrine of equitable estoppel protected landowners who had incurred substantial construction expenses as a result of municipality's actions. Accordingly, the Court finds that the doctrine of equitable estoppel was properly rejected by the Zoning Board when it reviewed Appellant's proposal.
 D The Zoning Board's Decision
Notwithstanding the aforementioned determinations, the Court recognizes that Appellants have characterized the Zoning Board's actions in denying its project as arbitrary and capricious. The Zoning Board responds by asserting that its decision to deny Appellants' subdivision was supported by an abundance of evidence, including the City's ordinance, memoranda submitted by its Planning Director and city solicitor, a correct interpretation of the Comprehensive Plan, and an analysis of neighborhood development patterns.
Essentially, "`when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" Coleman v. Metropolitan Life Ins. Co.,919 F. Supp. 573, 581 (D.R.I. 1996) (citations omitted). Our Supreme Court has consistently stated that "[a] zoning board should state the reasons or grounds on which it bases its ultimate decision, and not mere conclusions and generalities. . . ." Health Havens, Inc. v. Zoning Bd.of Review of the City of East Providence, 101 R.I. 258, 261,221 A.2d 794, 979 (1966). *Page 28 
Although the Court cannot weigh evidence submitted as a part of the record, it is within its province to determine whether the evidence upon which the Zoning Board's decision was based "has probative force due to its competency and legality." Salve Regina College v. Zoning Bd. ofReview of the City of Newport, 594 A.2d 878, 880 (R.I. 1991). For example, a Zoning Board need not accept expert testimony if there is evidence of record that controverts his or her opinion. SeeRestivo, 707 A.2d at 671. It may not, however, base its findings on board members' conclusions and generalizations if they lack probative force. See Salve Regina College, 594 A.2d at 882. Similarly, reliance on lay testimony alone is not an adequate basis for denying a landowner's subdivision application. See Perron v. Zoning Bd. of Review for the Townof Burrillville, 117 R.I. 571, 575, 369 A.2d 638, 641 (1977); see alsoGoldstein v. Zoning Board of Review of Warwick, 101 R.I. 728, 732,227 A.2d 195, 198 (1967) (finding board's action to deny petition arbitrary and capricious if expert testimony only controverted by lay testimony).
The Court finds it significant that the Planning Department (Department) first recommended that the Planning Board approve Appellants' subdivision. In fact, at Appellants' initial public hearing, Planning Board members defended the project against neighbors' complaints regarding increased traffic, parking congestion, and snow removal. Their responses undoubtedly stemmed from the Department's report of May 3, 2006. In it, the Department noted that the allotted area for parking exceeded that required by zoning, and the addition of a fire hydrant, individual drywell systems, and the connection to local sewer, water, and gas utilities, would prevent any negative impact on the health, safety, and welfare of East Providence.
While the Department recognized that "the subdivision proposes to develop the parcels to a reasonable extent[,]" it also commented that "[a]ny further division of these parcels would *Page 29 
detract greatly from the existing character of the neighborhood and decrease privacy to existing and future property owners." To limit future development, the Department suggested that a deed restriction should be used to prevent further subdivision of the property. Despite the Planning Board's protest that it is "not a board of compassion," but a board of bylaws, and only upon entertaining the full scope of neighbors' concerns — decreased property values, general congestion in the area, wear and tear on the existing infrastructure, the inability of children to safely play in the streets, and fears of crime and vandalism — did it vote to continue the hearing.
Before Appellants' continued public hearing, the Department issued a second recommendation, dated July 17, 2006, which starkly resembled its first opinion. This time, the Department's focus was on the Town's Comprehensive Plan and the project's compatibility with the existing character of the neighborhood. It contained a study indicating that single-family dwellings comprised 81% of the structures in the immediate neighborhood, two-family homes represented 9% of the existing structures in scattered locations, and the remaining parcels were vacant. It appears that this study was conducted using a 1000 foot radius surrounding the proposed site. (Tr. II at 53.) The Department stated that the average density in this area of the community was 5.3 units per acre. Where the Department's earlier focus had been on the project's neutral impact on the surrounding environment with respect to drainage, street congestion, and the local infrastructure, it now stated that the concentration of three duplexes on a 28,000 square foot lot threatened the existing character of the immediate neighborhood and "certainly [would] not contribute to the attractiveness of the community." It formulated this conclusion based on the various factors that were considered when developing the Land Use 2010 Plan. *Page 30 
Although much of the July 20, 2006 public hearing was devoted to commentary on the project's alleged inconsistency with the Comprehensive Plan, Mr. Joseph Lombardo testified in support of Appellants' project. He performed a study on development within a 300 foot radius around the site; this radius extended 100 feet beyond which abutting residents would be entitled to notification of the public hearing. Mr. Lombardo determined that 66% of the 39 parcels within the vicinity are single family homes and 23.5% were two-family homes. Mr. Lombardo also cited to a portion of the Comprehensive Plan designed to accommodate growth while efficiently using the remaining undeveloped land in the community. (Tr. II at 45-46.) He found that because the property is located in a mixed residential area and the project promotes a balance of housing choices, it is "an excellent opportunity to take advantage of a site that has its infrastructure." (Tr. II at 49.)
The second public hearing again was not without the neighbors' input regarding the pitfalls of non-owner-occupied rental properties. Certain Planning Board members made commentary of their own. One member commented that the Comprehensive Plan was designed for "a situation like this[,]" or to prevent an owner from building a structure in an area that does not have room for it. (Tr. II at 111.) Specifically, the board member remarked,
 "[w]hat they're [the neighbors] are trying to say is that they don't want to wake up in the morning and see these two buildings — three buildings, I am sorry, in front of them like a wall. It does not fit. If it was nice housing, it would fit in. You do what you have to do, but the way I see it, the way it looks, it does not fit in with the Comprehensive Plan compliance at all. . . . I definitely would have to go with the Planning [Department] on their recommendation on this, as far as I'm concerned. [B]ecause that's our little law and our little ace in the hole is the Comprehensive Plan, and I'm glad it's in effect to protect the people from this. . . ." Id. at 112-13.
Prior to voting on the project's denial, the Chairperson of the Planning Board also commented.
He stated as follows: *Page 31 
 "I want to take a second and applaud the citizens of this neighborhood that have come out tonight and that came out the last time. I was, frankly, prepared at the last meeting to vote to approve this subdivision. Through your insistence; however, and the passionate remarks that were made by many of the citizens, I think you really forced the city to take another look at that, and when they did, they realized you were right. There's a density issue that exists in this case. This particular development is not consistent with the density that's set forth in the Comprehensive Plan, and frankly, that point would very well have been missed if this room hadn't been full of concerned and passionate people." Id. at 117-18.
Based on the Department's initial recommendation, as well as the Planning Board members' commentary at the first public hearing, it is clear that the Planning Board once was inclined to approve Appellants' subdivision. Despite the troubling commentary made by the Planning Board's members, substantial competent evidence supported its denial of Appellants' subdivision, which, in turn, is reflected in the Zoning Board's review of that decision.
While lay testimony was rife within the record, the record also indicates that two studies — one by Appellants' expert and one by the Department — were considered by the Zoning Board. Although the radius utilized in calculating the percentages of two-family homes in the surrounding neighborhood differed within each study, even the study conducted by Appellants' expert demonstrated that a high concentration of duplexes already existed near the proposed location. Further, the Department calculated that the average density of the neighborhood was 5.3 units-per-acre, while Appellants' proposal would result in three lots having a density of 9.33 units-per-acre, a figure greater than allowed by the Comprehensive Plan and nearly double the average density in that area.
Most importantly, the Zoning Board had before it a Comprehensive Plan for land development within its borders. The density regulation arising from detailed studies aimed at preserving the environmental integrity of the community, regulating congestion, managing community resources, and maintaining the character of the neighborhood, could not be ignored *Page 32 
by the Zoning Board. Absent any additional information regarding the Planning and Zoning Boards' routine failure to enforce the 5.8 unit-per-acre density restriction of the Comprehensive Plan, the Court cannot view the boards' actions as arbitrary and capricious.[13]
 VI Conclusion
The Court finds that the Zoning Board's interpretations of the applicable statutes, ordinances, subdivision regulations, and the Comprehensive Plan governing land use decisions in the City of East Providence were not clearly erroneous. The Court also finds that the Zoning Board's action with respect to Appellants' subdivision proposal was not arbitrary and capricious and did not prejudice the substantial rights of the Appellants. Consequently, the decision of the Zoning Board, which upheld the Planning Board's denial of Appellants' proposed subdivision, is affirmed.
[1] No other party in interest has filed an objection to the appeal.
[2] Neither Appellants nor Appellees have provided this Court with what would appear to be the official zoning map of the City. The only maps found in this record include the Comprehensive Land Use Plan 2010 map, which is not dated, and the Comprehensive Land Use Plan 2010 map, dated July 2004. The zone designation found in the table in Section 19-98, however, is frequently referred to by both parties when discussing the zone in which appellants' property is found. Consequently, this Court presumes that both parties have agreed that the official zoning map of the City delineates Appellants' property within the R-4 zone.
[3] Appellants indicated that the administrative subdivision application was unilaterally reclassified in the absence of any authority to do so; however, Section 7-3 of the City's Land Development and Subdivision Review Regulations, entitled "Re-Assignment to Minor Subdivision or Other Review," permits such a reclassification as follows:
 "Upon review of an application for administrative subdivision, the Administrative Officer may determine that the subdivision does not qualify as an administrative subdivision, or involves factors which should be reviewed by the Planning Board or Zoning Board, and shall either refer it to the Planning Board as an administrative subdivision or shall re-assign the application for review as a minor subdivision plan or some other classification as allowed by these Regulations." East Providence Land Development and Subdivision Review Regulations at § 7-3.
[4] In her May 25, 2006 memo, the Planning Director first stated that the Comprehensive Plan amendment regarding density was adopted by the City Council in November 2001. In the following paragraph, she states that it was adopted in October 2001.
[5] In his testimony before the Planning Board on July 20, 2006, Joseph Lombardo, Appellant's expert, testified that Section 19-98 of the zoning text actually pre-dates the approval of the Comprehensive Plan.
[6] The Zoning Map provides for a minimum lot-size to regulate density while the Comprehensive Plan provides a unit-per-acre calculation.
[7] Placing a two-family home on an 8750 square foot lot would produce a unit per acre density of 9.96 units per acre. Since an 8750 square foot lot equates to 0.20087 acres, placing 2 units on 0.20087 acres would yield a density of 9.96 units per acre. The maximum density permitted by the comprehensive plan is 5.8 units per acre.
To achieve the maximum allowable density for a duplex utilizing the lot-size requirement of the zoning ordinance, a homeowner would be required to have a minimum square footage of 15,020 square feet to correspond with the requirements of the Comprehensive Plan. This figure was determined by dividing the number of units desired, or two, by the 0.3442 acres, or 15,020 square feet.
[8] The Legislature has delegated the power to approve subdivisions and land developments to the State's municipalities. See § 45-23-26(b); § 45-23-29(c).
[9] The Court can envision a scenario in which the provisions on Page C.1-66 of the Comprehensive Plan would become relevant. For example, if a property owner in an R-2 residential district wanted to build a multi-family dwelling, as that use appeared in an updated Comprehensive Plan but was not yet on the official zoning map, that property owner would be required to begin the rezoning process in order to reflect the new use in the Comprehensive Plan on the ordinance itself.
[10] According to the Planning Director, the Town Council made amendments to the zoning ordinance shortly after it had approved the Comprehensive Plan. As discussed, the density of Appellants' R-4 district was reduced on the Land Use Plan 2010 Map, which is a part of the Town's Comprehensive Plan. The density, through dimensional requirements, was also lowered in the zoning ordinance as reflected in the use table. A specific unit-per-acre regulation was not, however, incorporated into the ordinance through this amendment.
[11] The "adoption" of the plan occurs when the legislative body of the municipality takes a vote thereon. See § 45-22.2-8. It is then reviewed by the state, which will "approve" it pursuant to the procedures set forth in § 45-22.2-9. Compare East Providence Revised Ordinances § 15-86 (demanding subdivisions adhere to Comprehensive Plan once "adopted" by city council) and East Providence Revised Ordinances § 15-86(b) (stating planning board "may" require that subdivision adhere to plan during preliminary drafting stages before its adoption)with §§ 45-24-34 and 45-24-50 (requiring ordinance comply with Comprehensive Plan within 18 months of formal state approval). Conforming land use decisions to the Comprehensive Plan immediately upon its adoption is logical; the plan itself is a forward-looking document and espouses goals and policies regarding a municipality's long term physical development. See § 45-22.2-6.
[12] In New England Dev't, LLC v. Berg, 913 A.2d 363 (R.I. 2007), plaintiff sought approval of its master plan to build a shopping center. The Tiverton Planning Board rejected plaintiff's master plan, but its written denial was filed beyond the 120-day time frame dictated by statute. Id. at 364. Plaintiff claimed that the Planning Board's failure to file the decision entitled it to a certificate of approval. The Rhode Island Supreme Court determined that the absence of a sanction within that statutory section rendered the 120-day filing deadline directory, rather than mandatory. Id. at 372. It further commented that "[w]hile [the statute] does direct a decision to be written and filed within 120 days, imposing the sanction of approval by default for the failure to meet the deadline would be overly burdensome." Id. at 373. Providing default approval of the applicant's project as a result of the Planning Board's failure to file a timely decision would be a "drastic sanction," serving "to remove review from the hands of local officials by approving development projects simply because the planning board was unable to meet procedural strictures." Id.
[13] On more than one occasion within their supporting memoranda, Appellants allege that the Planning and Zoning Boards have permitted development in the vicinity of the proposed subdivision that exceeds the density permitted by the Comprehensive Plan. The Court notes that it had allowed Appellants to supplement the record in what appeared to be an attempt to prove this allegation. Remarkably, after they had done so, but before the Court had an opportunity to review the supplemented record, the parties then stipulated to remove those items which had expanded the record without any explanation to the Court. Consequently, the Court does not possess any factual record reflecting the Planning Board's general policy on analyzing the density of proposed projects. Without any factual record indicating that the boards failed to apply uniformly the density restrictions to neighboring development projects, the Court, at this point in time, is unable to determine whether the Planning and Zoning Boards arbitrarily and capriciously enforced the Comprehensive Plan's density restriction against Appellants. *Page 1